Parsons, C. J.
This action is assumpsit on a promissory *298 note for the delivery of slaves, and the payment ol [ * 363 ] * bars, which are an African currency, and also on an insimul computassent. A verdict has been found for the plaintiff, upon a trial on the general issue, subject to the opinion of the Court, upon a case stated by the parties.
*299 Two objections have been made to the verdict by the counsel for the defendant — that the letters of Hippias * were improperly admitted in evidence; and, if they [ * 3S4 ] were not, that no action can be maintained in this state on a breach of either of the supposed promises.
*300 The note was made at Rio Pongos, on the coast of Africa, for the delivery of slaves there on demand. Hence the defend- [ * 365 ] ant very properly argued that the slaves ought to * have been demanded, before he could be discharged in an action on the note; and there was no evidence of this demand, but *301 what arose out of Hippias’s letters. If those were not properly admitted, and the plaintiff cannot recover upon the insimul computas sent, the verdict must be set aside. But if the plaintiff can maintain his action upon * the insimul computassent, [ * 366 ] where no previous demand was necessary to entitle him *302 to his action, the admission of Hippias’s letters becomes immaterial, and cannot affect the verdict.
When the plaintiff’s vessel, of which Hick )orn was master and supercargo, arrived in Africa, the master sold [ * 367 ] * the cargo to the defendant, to be paid for by the de *303 livery of one hundred and fifteen slaves. The defendant delivered but a part of the slaves to Delaney, who, on the death of Hichborn, succeeded him as master, and the vessel returned without the residue. The contract on the part of the defendant was then broken, and the plaintiff, if the * contract [ * 368 ] *304 was lawful, had his remedy at law, to recover damages for such breach.
That the contract was not performed, is admitted by the defendant; for he has stated an account between himself and the owner of the outward cargo, in which he credits the owner with *305 the value of the cargo, and after having * charged him [ * 369 ] with the slaves delivered, and the advances made to the master, acknowledges a balance in cash of 6056 bars, equal to 4481 dollars 41 cents, due from him. If no further transactions had been had. there can be no doubt but that the plaintiff, on assenting to *306 this settlement, might have recovered this balance on an [ * 370 ] insimul computassent, *and without making a demand of the money previous to the action.
But it appears that, on the same day, before Delaney left Rio Pongos, the defendant also made the note declared on, the balance *307 of the account being the consideration of the note, and the note and accounts being parts of the * same transac- [ * 371 ] tion. It is manifest, then, that the plaintiff cannot recover both on the note and on the account. If there be no illegality attached to this transaction, the plaintiff may recover on either, as the note, not being negotiable nor accepted in satisfaction of the account, nor of a higher nature, does not merge the account.
* Being, therefore, well satisfied that an action may be [ * 372 ] maintained on the insimul computassent, if the settlement
was not illegal, without any previous demand, it becomes unnecessary to give any opinion on the admission of Hippias’s letters. But having considered this question, it is our opinion that the admission was regular. Hippias was * sent to make the [*373] demand, in a country where there is no regular civil government, and not having, that we know of, any magistrates or notaries authorized to take and certify affidavits, or regularly to authenticate testimony in any manner; and as no cause was then pending or expected, it cannot be required that he should carry with him a dedimus protestatem.
* There seems therefore to be a commercial necessity [ * 374 ] to admit evidence of this nature under these circumstances, to enforce contracts made abroad in barbarous or uncivilized countries. (2) This evidence might be controlled : and if the defend *308 ant had shown, that when Hippias was at Rio Pongos, [ * 375 ] the slaves were ready to be delivered, probably * little credit would have been paid to the letters. But whether this opinion be or be not correct, if an action can be maintained on the insimul computassent, the admission was immaterial, and cannot affect the verdict.
The second objection, that ho action upon either of the promises alleged can be maintained in this state, is principally [ * 376 ] * relied on by the defendant. The argument of his counsel has been supported with much ingenuity. The slave trade, he has argued, is, or has been, prohibited by a statute ot the commonwealth, in the preamble of which it has been declared to be an unrighteous commerce; and he attempted to show that in itself it was immoral. This objection deserves much consideration.
[*377] * By the common law, upon principles of national
comity, a contract made in a foreign place, and to be there executed, if valid by the laws of that place, may be a legitimate ground of action in the courts of this state; although such contract may not be valid by our laws, or even may be prohibited to our citizens. Thus, in states where a greater [ * 378 ] * rate of interest is allowed than by our statute, a contract securing a greater rate of interest, but agreeably to the law of the place, may be sued in our courts, where the plaintiff shall recover the stipulated interest.
This rule is subject to two exceptions. One is, when the commonwealth or its citizens may be injured by giving legal effect to the contract by a judgment in our courts. Thus a contract for the sale and delivery of merchandise in a state where such sale is not prohibited, may be sued in another state, where such merchandise cannot be lawfully imported. But if the delivery was to be in a slate where the importation was interdicted, there the contract could not be sued in the interdicting state, because the giving of legal effect to such a contract would be repugnant to its rights and interest. Another exception is, when the giving of legal effect to the contract would exhibit to the citizens of the state an example pernicious and detestable. Thus, if a foreign state allows of mar *309 riages incestuous by the law of nature, as between parent and child, such marriage could not be allowed to have any validity here. * But marriages not naturally unlawful, but pro- [*379] hibited by the law of one state, and not of another, if celebrated where they are not prohibited, would be holden valid in a state where they are not allowed. As, in this state, a marriage between a man and his deceased wife’s sister is lawful, but it is not so in some states, such a marriage celebrated here would be held valid in any other state, and the parties entitled to the benefits of the matrimonial contract. Another case may be stated, as within this second exception, in an action on a contract made in a foreign state by a prostitute, to recover the wages of her prostitution. This contract, if lawful where it was made, could not be the legal ground of an action here ; for the consideration is confessedly immoral, and a judgment in support of it would be pernicious from its example. And perhaps all cases may be considered as within this second exception, which are founded on moral turpitude, in respect either of the consideration or the stipulation.
Before the present case can be compared with this rule, including the exceptions to it, the merits of it must be ascertained.
In South Carolina it was lawful to purchase slaves on the coast of Africa, and to import them as merchandise into that state. And it does not appear that this purchase and importation were unlawful at Rio Pongos. The original contract was made at Rio Pongos for the purpose of obtaining slaves to transport to Charleston. The account was stated at Rio Pongos, in which the defendant acknowledged a balance due in cash, which was assented to by the plaintiff in Charleston. Whether either of the contracts is to be governed by the law of Rio Pongos or of South Carolina is immaterial; for in either case it does not appear that either of them was invalid lege loci. Either of them, therefore, may be the ground of an action in this state, unless it come within one of tire exceptions to the rule, even if a contract of this nature made by the citizens of this state, should be void. To maintain action, if it be not [ * 389 ] within * the exceptions, is enjoined on us by the comity we owe another state. And to entitle the defendant to retain in his hands the debt which he justly owes as between the parties, he ought clearly to show some principle, by which he may defend himself in dishonestly retaining this property.
We do not perceive any injury that could arise to the rights or interests of this state or its citizens, if either of the contracts had been faithfully executed agreeably to the terms of it. It was made abroad, by persons not citizens of the commonwealth, and to be executed abroad, having no relation in its consequences to our laws,
*310 The defendant, therefore, to establish his defence, must bring this case within the second exception, and show that the action, as considered by the laws of this commonwealth, is a turpis causa, furnishing a pernicious precedent, and so not to be countenanced. This, upon public principles, he is authorized to do, notwithstanding he is a party to all the moral turpitude of the contract.
The argument is, that the transportation of slaves from Africa is an immoral and vicious practice, and consequently that any contract to purchase slaves for that purpose is base and dishonest, and cannot be the foundation of an action here within the principle of comity adopted by the common law. This objection may apply to the counts on the note, but not to the count on the insimul computassent.
Laying the counts on the note out of the case, we shall consider the objection of moral turpitude, so far as it affects the count on the insimul computassent; and we are satisfied that the objection does not apply to the contract averred in this count; there being nothing immoral in the consideration on the plaintiff’s part, or in the stipulation made by the defendant. If a Charleston merchant should send a cargo of merchandise to Africa, for the purpose of there selling it, and with the proceeds to purchase slaves ; and if the cargo be accordingly sold, and the purchaser agree to [* 331 ] pay for it in slaves ; and he afterwards shall refuse *or neglect to deliver the slaves, but makes a new agreement with the owner to pay him a sum of money for his cargo, an action can unquestionably, in our opinion, be maintained on this new contract; and the illegal contract, being annulled or void, cannot affect it. So, if the purchaser had delivered a part only of the slaves to the' merchant, and afterwards agrees with him to pay the balance in cash, we see no objection to an action to recover this balance in cash, if the purchaser refuse to pay it. (3)
In the present case, the defendant, having delivered a part only of the slaves, and having become a creditor of the plaintiff for supplies furnished to his use, states his account, in which, after deducting the slaves delivered and the supplies furnished, he acknowledges a balance in cash, and the plaintiff, having assented to the account, demands the balance in this action. We see no legal objection to his recovery. The consideration of the implied promise arising from this settlement is the sale of the cargo, which involves in it no moral turpitude; neither is the performance of the *311 promise by paying the balance in cash immoral. And although, on the same day, the defendant, in consideration of this balance due in cash, promises by his note to discharge it principally in slaves, and the small remainder in cash, yet this promise is no bar to an action by the plaintiff on the account, even if the promise by the note is here considered as legal, and a fortiori if it is considered as void for its immorality. It is true, if the defendant voluntarily discharged the note, the balance of the account could not afterwards be recovered, for the consideration of it was discharged by the payment of the note; nor could the payment of the note be recovered back, for potior est conditio possidentis.
In this case, the defendant having acknowledged a balance of cash in his hands, the property of the plaintiff; although it came into his hands from the sale of the merchandise, for which he was to pay in slaves, but did not, this * balance, [ * 382 ] as between the parties, is justly due the plaintiff; and unless the principles of public policy against the action upon the insimul computassent are manifest, we cannot decide that the defendant shall not be held to pay what he justly owes.
In this view of the case, we are satisfied that the action is maintained on the insimul computassent, and that the plaintiff may take his verdict on that count, and have judgment entered upon it.

Judgment according, to verdict. 
(4)

 Per Wilmot, J., 2 Burr. 1084, Robinson vs. Bland.

 Grot. lib. 3, c. 7, § 1. — Lib. 2, c. 5, § 27. — Puffen. lib. 3, c. 2, § 8. — Lib. 2, r. 5.— Co. Lit. 116, b. — Paley’s Principles of Philosophy, 158. — 1 Black. Com. 423, 424. — 2 Black Com. 92, 93.

 2 Lev. 201, Butts vs. Penny.

 1 Black. Com. 425, and Christian’s note thereon.

 Co. Lit. 6, b.

 7 Rep. 4.

 1 Wils. 84, Omichund vs. Barker. — 1 Atk. 21, S. C. - Willes’s Rep. 588, S. C. — 2 Show. 484, Fachina vs. Sabine.

 Willes’s Rep. 542.

 3 Lev. 336.

 1 L. Raym. 147.

 5 Mod. 186. — Carth. 396, S. C. — 1 L. Raym. 146, S. C.

 2 Salk. 666, Smith vs. Brown.

 2 Salk. 666.

 Loft's Rep. 1.

 [These letters would have been clearly inadmissible if the writer had been living at the time of the trial. They were not admissible merely as being letters of an agent. There is no case in which the letters, declarations, or admissions, of a living agent, have been received to establish the truth of a matter against the party, whose agent he was not, and who, of course, gave him no authority, either express or implied, to write the letters, or make the declarations, or admissions. The letters, declarations, and admissions, of a living agent, are admitted in evidence only against his principal; and even then they are not received for the purpose of establishing the truth of the matter stated, but as representations, authorized by express or implied authority from the principal, to be made, and, therefore, as being regarded, in the eye of the law, as his own acts. — Fairlie vs. Hastings, 10 Ves. 327. — Kahl vs. Janson, 4 Taunt. 565. — Langhorn vs. Alnutt, 4 Taunt. 511. — Garth vs. Howard, 4 Bingh. 452. Phil. Ev. 8th ed. 401 — 406. — These letters, if admissible in evidence at all, could only *308 be received as the declarations of a disinterested person, since deceased, having a peculiar knowledge of the facts stated, ruade in the ordinary course of official, professional, or other business, or duty, inonediately connected with the transactions, or discharging it, and contemporaneous, or nearly so, with the transacting to which they relate. — Doe vs. Turford, 3 Barn & Ad. 896. — Poole vs. Dicas, 1 Bingh. N. C. 652. — Chambers vs. Bernasconi, 1 Cr. & J. 451. — 1 Tyr. 335. — Glendon vs Atkin, 1 Cr. & M. 420, per Bayley, B. See the cases cited and commented upon by Mr. Phillips. 8th ed. Phil. Ev. 332 — 352. — Ed.]

 [These suppositions do not seem to correspond with the facts of the case as reported. Here was no such new agreement. Certainly the case finds no express agreement to pay in cash, and no implied agreement could be raised upon the facts upon which an action could be maintained. — Perkins vs. Savage, 15 Wend. 419 — Ed.]

 [Here does not seem to have been any evidence upon which an account stated ¿ould be maintained. The amount, and the written promise, must be taken together, as each making part of one and the same transaction. There was no acknowledgment of money due, simply, or promise to pay money, but merely an acknowledgment of having received certain moneys, for a certain number of slaves, which defendant promised to deliver to the plaintiff.— Ed.]