Mr. Chief Justice Sharkey
delivered the opinion of the court.
The complainants, who are the appellees, claim the property mentioned in the bill as heirs at law of Elisha Brazealle.^ The allegations in the bill disclose these facts. Elisha Brazealle left this state, where he permanently resided, some time in the year 1826, and took with him to the state of Ohio, a negro woman and her son, John Munroe Brazealle, for the purpose of emancipating them, and with the intention of then bringing them back to this state. That he accordingly executed the deed of emancipation whilst in Ohio, and returned with the, negroes to his residence in Jefferson county, where he continued to reside until his death. By his will executed after the deed, he recited the fact that such a deed had been executed, and declared his intention to ratify it, and devised his property to the said John Munroe, acknowledging him to be his son. His executors proved the will and took charge of the estate, and have continued to hold it and receive the profits. The complainants claim the estate on the ground, that the deed of emancipation was void as being contrary *842 to the laws and policy of this state, and that being so the said John Monroe is still a slave and incapable of taking by devise, or holding property. The respondents demurred to the bill, which was overruled by the chancellor and this appeal taken.
The deed of emancipation is not made an exhibit, but the bill alleges it to have been made in the manner and for the purpose described, and it is referred to and ratified by the will. The validity of this deed is the main question in the controversy.
Upon principles of national comity, contracts are to be construed according to the laws of the country or state where they are made, and the respective rights and duties of parties are to be defined and enforced accordingly. As these laws derive their force entirely from comity, they are not to be adopted to. the exclusion of state laws by which the great and fundamental policy of the state is fixed and regulated. And hence it follows that this rule is subject to exceptions. No state is bound to recognise or enforce a contract made elsewhere, which would injure the state or its citizens; or which would exhibit to the citizens an example pernicious and detestable. Story’s Conflict of Laws, 203; 6 Mass. Rep. 358. If, then, exceptions are to be adopted, with reference to the contracts made in good faith, how more forcibly would they apply to contracts made with a view to evade the laws of this state. It is a settled and sound principle that no state will enforce a contract made by its citizens elsewhere in violation and fraud of its laws. Story’s Conflict of Laws, 198.
Let us apply these principles to the deed of emancipation. To give it validity would be, in the first place, a violation of the declared policy, and contrary to a positive law of the state. The policy of a state is indicated by the general course of legislation on a given subject, and we find that free negroes are deemed offensive, because they are not permitted to emigrate to, or remain in the state. They are allowed few privileges, and subject to heavy penalties for offences. They are required to leave the state within thirty days after notice, and in the meantime give security for good behavior, and those of them who can lawfully remain, must register and carry with them their certificates, or they may be committed to jail. It would also violate a positive law, passed by the *843 legislature, expressly to maintain this settled policy, and to prevent emancipation. No owner can emancipate his slave, but by a deed or will properly attested, or acknowledged in court, and proof to the legislature, that such slave has performed some meritorious act for the benefit of the master, or some distinguished service for the state; and the deed or will can have no validity until ratified by special act of the legislature. It is believed that this law and policy are too essentially important to the interests of our citizens, to permit them to be evaded.
The state of the case shows conclusively,, that the contract had its origin in an offence against morality, pernicious and detestable as an example. But above all, it seems to have been planned and executed with a fixed design to evade the rigor of the laws of this state. The acts of the party in going to Ohio with the slaves, and there executing the deed, and his immediate return with them to this state, point with unerring certainty to his purpose and object. The laws of this state cannot be thus defrauded of their operation by one of our own citizens. If we could have any doubts about the principle, the case reported in 1 Randolph, 15, would remove them. ,
As we think the validity of the deed must depend upon the laws of this state, it becomes unnecessary to inquire whether it could have any force by the laws of Ohio. If it were even valid there, it can have no force here. The consequence is, that the negroes John Munroe and his mother, are still slaves, and a part of the estate of Elisha Brazealle. They -have not acquired a right to their freedom under the will; for, even if the clause in the will were sufficient for that purpose, their emancipation has not been consummated by an act of the legislature.
John Munroe being a slave, cannot take the property as devi-see; and I apprehend, it is equally clear, that it cannot be held in trust for him. 4 Desaus. Rep. 266. Independent of the principles laid down in adjudicated cases, our statute law prohibits slaves from owning certain kinds of property, and' it may be inferred, that the legislature supposed they were extending the act as far as it could be necessary to exclude them from owning any property, as the prohibition includes, that kind of property, which *844 they would most likely be permitted to'own without interruption, to wit, hogs, horses, cattle, &c. They cannot be prohibited from holding such property in consequence'of its being of a dangerous or offensive character, but because it was deemed impolitic for them to hold property of any description.
It follows, therefore, that the heirs are entitled to the property.
As the deed was void, and the devisee could not take under the will, the heirs might, perhaps, have had a remedy at law; but as an account must be taken for the rents and profits, and for the final settlement of the estate, I see no good reason why they should be sent back to law. The remedy is, doubtless, more full and complete than it could be at law.
The decree of the chancellor overruling the demurrer must be affirmed, and the cause remanded for further proceedings.