BUGBEE, Ex parte. See Cases Nos. 7,941 and 7,942.

---

## Case No. 2,115.

### In re BUGBEE.

[9 N. B. R. 258.]¹

District Court, N. D. New York. Jan. 3, 1874.

BANKRUPTCY—PROOF OF DEBT—INTEREST—RIGHTS OF FOREIGN CREDITORS AS AGAINST THOSE DOMICILED WITHIN THE UNITED STATES.

1. A bank in Canada filed with the assignee in bankruptcy proof of an alleged debt to the amount of some fifteen thousand dollars in lawful money of the dominion of Canada. It appeared that part of this amount was in judgment, upon which execution had been issued and the sum of two thousand dollars was collected over and above the costs and expenses of such sale; that the residue of the debt proved was claimed as due upon drafts drawn upon and accepted by the bankrupt, payable in the city of Buffalo, and also included interest at the rate of four per cent., and damages for the non-payment of such acceptances, such damages amounting to nearly five hundred dollars. The assignee petitioned to this court for an order striking out the proof of debt of the bank, unless it should pay into court the amount realized upon the execution, to be distributed equally among the creditors, and consent to receive dividends upon the amount of principal due from the bankrupt, and release its judgment and all claims for damages, interest and costs. *Held*, that, under the circumstances, the bank, if it had had its corporate existence in the United States could not have obtained, by a suit at law and judgment therein, in the courts of this country, any right to property sold under such judgment, and all such proceedings would have been stayed, on application, by order of the bankrupt court, and a foreign creditor cannot claim, under the comity of nations, to be more favored than our own citizens, to the direct

¹ [Reprinted by permission.]

prejudice of creditors residing here. It is, therefore, clear that it must account for the property converted to its use in Canada, to the assignee, and proof can be made and dividend taken upon the original debt only, without regard to a subsequent judgment thereon.

2. The whole debt of the creditor, at the time the bankruptcy proceedings were commenced, shall be considered the debt upon which this principle of equity among creditors is to operate; that no damages can be allowed to a foreign creditor as against the acceptor of a draft payable here.

3. The amount proved should not include interest beyond the day of adjudication.

In bankruptcy. The Merchants' Bank of Canada having filed with the assignee in bankruptcy appointed in this proceeding, proof of an alleged debt of [Oliver Bugbee] the bankrupt to the amount of fifteen thousand and thirty dollars and eighty-five cents, in lawful money of the dominion of Canada, being gold; and it appearing thereby that two thousand three hundred and ninety-eight dollars and ninety cents of the sum mentioned in such proof were claimed to be due upon a judgment recovered in Canada, on the 4th of March, 1873, in a suit commenced on or about the 9th day of January, in that year, against the bankrupt and one William R. Fellows; that the sum recovered by such judgment was four thousand three hundred and eighty-nine dollars and ninety-six cents, of which seventy-three dollars and sixty-five cents were the costs of such suit, and that upon an execution issued upon said judgment there had been collected by the sale of property of the bankrupt the sum of two thousand and seventy-three dollars and ninety cents, over and above the fees of the sheriff, and the costs and expenses of such sale; that the residue of the debt or sum so proved was made up of drafts drawn upon and accepted by the bankrupt, payable in the city of Buffalo, in the state of New York, and included interest and damages for the non-payment of such acceptances, such damages being at the rate of four per cent. on said drafts, and amounting in the aggregate to four hundred and ninety-two dollars, besides interest. The assignee, by his petition addressed to this court, and setting forth, among other things, the facts above stated, applied for an order striking out such proof unless the said Merchants' Bank of Canada should pay into court the amount realized by the sale of the property of the bankrupt, under the execution aforesaid, to be distributed equally among the creditors of the bankrupt, and also consent to receive dividends upon the amount of principal due from the bankrupt, and release its said judgment and all claim for damages and interest, and the costs included therein. The petition also prayed for such other, further or different order or relief as might seem just and proper.

The statements of the petition, so far as the same are above set forth, were admitted at the hearing; but the counsel for the bank,

while conceding that the four per cent. damages claimed could not be allowed upon the drafts not in judgment, insisted that the bank had a right to apply the moneys collected on such judgment in payment of the damages included therein, on the ground that the right to such damages had been settled by the judgment; and they contested the right of the assignee to any further reduction of the amount claimed by the bank.

Mr. Ganson, for the assignee, cited and relied upon Napier v. Shneider, 12 East, 420.

Sprague & Gorham, for the bank, cited 3 Kent. Comm. 116; Betton v. Valentine [Case No. 1,370]; Oakey v. Bennett, 11 How. [52 U. S.] 44; Booth v. Clark, 17 How. [58 U. S.] 335; Olyphant v. Atwood, 4 Bosw. 461; Ward v. Jenkins, 10 Metc. [Mass.] 589.

HALL, District Judge. The petitions upon which the bankruptcy proceedings in this case are founded were filed on the 12th day of December, 1872—nearly thirty days before the commencement of the suit in which the judgment in favor of the Merchants' Bank of Canada was obtained, and (an adjudication in bankruptcy having been granted thereon on the 24th day of the same month) the right of the assignee in bankruptcy to all the property of the bankrupt transferred by such bankruptcy proceedings, vested, by relation, on the day such petitions were filed. Under such circumstances the creditor-claimant, if it had had its corporate existence in the United States, could not have obtained, by a suit at law and judgment therein in the courts of this country, any right to property sold under such judgment; and proceedings in any suit commenced by such creditor in a court of the United States or any state of the Union, either before or after such adjudication, would, on proper application, have been stayed by an order of the bankruptcy court. Bankrupt act, §§ 14, 20, 21 [14 Stat. 522, 526]. If the creditor in this case can sustain its full claim it must do so in violation of the principle that "equality among creditors is equity," as well as of the policy and principles of our bankrupt act, and solely upon the ground that, as against the execution or attachment of a foreign creditor, our bankrupt act does not operate to transfer the title of the property of the bankrupt in the foreign country of such creditor's residence, and that such creditor has therefore a right to seize such property by execution, and apply it in part payment of his debt without being affected thereby, except so far as his debt is reduced by the application of the proceeds of the property so seized. And the question now is, whether a foreign creditor, invoking the aid of our bankruptcy courts in the execution of our own bankruptcy laws, must, by these courts, be held to enjoy the right of seizing, by process of law, the property of the bankrupt found in the country of the creditor's domicile, and by process of law in that country

applying it in part payment of his debt, and when so seeking a further remedy in the bankruptcy courts of the United States, must be allowed to take a dividend upon the balance of his debt without other regard to what he has so realized under his foreign execution than the reduction of his claim and proof to the amount of such balance. Such a right on the part of a foreign creditor has no foundation in natural equity, nor can it be based upon any known principle of international or judicial comity. It must, therefore, be maintained, if at all, upon some rule of positive law binding upon the assignee and the general creditors of the bankrupt.

It was conceded that the assignment of the property of the bankrupt, under the proceedings in bankruptcy in this court, did not, under our laws or under the laws of Canada, (which, in respect to this question, are presumed to be the same as ours,) operate as a legal transfer of the bankrupt's property in Canada, as against a subsequent attachment or execution there levied upon it to enforce the collection of a debt due to a creditor domiciled in that dominion; and it is clear that the assignee in bankruptcy might, under the comity of nations, take and remove, or if necessary sue for and recover such property, except as against the competing rights of Canadian creditors. Harrison v. Sterry, 5 Cranch [9 U. S.] 289; Ogden v. Saunders, 12 Wheat. [25 U. S.] 213; Crapo v. Kelly, 16 Wall. [83 U. S.] 610; 2 Kent, Comm. 457; Booth v. Clark, 17 How. [58 U. S.] 322; Oakey v. Bennett, 11 How. [52 U. S.] 33; Betton v. Valentine [supra]. In this case the foreign creditor had a right to take and hold what had been reached by the foreign execution until a further remedy was sought in this court, and it thereby became a party to the proceedings in bankruptcy; but this is because our courts have refused to adopt the rule of comity which now prevails in England and in other countries of Europe, under which the title of foreign assignees in bankruptcy to the personal estate of the bankrupt is admitted to be vested by the operation of bankruptcy acts and proceedings, so as to defeat the attempts of creditors of bankrupts residing in a foreign jurisdiction to enforce the collection of their debts by subsequent levy on attachment or execution within such foreign jurisdiction—a doctrine which was not admitted in England until about the middle of the last century, and was not firmly established there until after the American Revolution.

We concede to foreign creditors the same rights to proceed by attachment or execution in the country of their domicil which we assert in favor of our own people in respect to the property of foreign bankrupts attached here to enforce the payment of debts due to our own citizens. (See the cases and authorities just cited.) Our doctrine is founded upon the principle that the laws of other governments have no force beyond their ter-

ritorial limits, and that if permitted to operate in other states it is upon a principle of comity which allows its operation only when neither the state nor its citizens would, as a general rule, be injuriously affected by the operation of such foreign laws. Greenwood v. Curtis, 6 Mass. 358, 378; Story, Confl. Laws, §§ 32, 38, 244, 414, 415. This principle is one universally acknowledged by civilized nations, and no state is bound to permit the operation of foreign laws when they are contrary to its known policy or prejudicial to its interests. Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519, 589; Bowyer, Pub. Law, 162. It is not generally deemed prejudicial to the country in which the personal property of a bankrupt is situated at the time of the bankruptcy to permit the assignment effected by the bankruptcy proceedings to operate as a transfer of the title of such property to the assignees except as against the rights of its own citizens as creditors of the bankrupt; and we have accordingly seen that such title is deemed to have passed to the assignees, except where such rights are asserted. England, having large foreign territory and immense dependencies in which her law can operate, and to whose merchants, traders and capitalists there is always a large balance of indebtedness due from the residents of almost every civilized country of the globe, has deemed it not inconsistent with the interests of her citizens to go further and to hold that foreign proceedings in bankruptcy operate to transfer the title of the movable property of the bankrupt wherever situated; and now that bankruptcy courts exist in most commercial countries, and telegraphic and steamship lines afford the means of rapid communication, it may well be doubted (as, indeed, it has heretofore been doubted by some of our most eminent jurists) whether the United States might not adopt the English rule, but the question cannot now be considered an open one by judges of the district courts.

It is conceded that the creditor's proceedings and remedy in Canada were wholly unaffected by the bankruptcy proceedings until the proof of debt made here. A remedy was then sought in this court, and the nature, extent and character of the remedy to be afforded in these bankruptcy proceedings must be determined by the bankrupt act and other laws of the United States. 2 Bouv. Law Dict. (12th Ed.) tit. "Lex Fori," 5, and cases cited; 2 Kent, Comm. 462, 463; Suydam v. Barber, 6 Duer, 34; Townsend v. Jemison, 9 How. [50 U. S.] 407; Story, Confl. Laws, § 327. That a creditor of the bankrupt residing in the United States could not, after the bankruptcy proceedings were commenced, have secured by proceedings in our own courts any such right as is here claimed by the foreign creditor, is entirely clear; and a foreign creditor cannot claim under the comity of nations to be more favored

than our own citizens, to the direct prejudice of creditors residing here. If the creditor-claimant in this case had taken, in and under the authority of a court of another state of this Union, the same proceedings which were taken in Canada, it would have been liable to account to the assignee for the full value of the property thus wrongfully converted to its own use. That it must account for the property converted to its use in Canada, if allowed a further remedy in the bankruptcy proceedings here, is deemed beyond question. These doctrines are believed to be fully sustained by the decisions of the English courts. In De La Vega v. Vianna, 1 Barn. & Adol. 284, Lord Tenterdon, in delivering the opinion of the court of king's bench, said: "A person suing in this country must take the law as he finds it; he cannot by virtue of any regulation of his own country enjoy greater advantages than other suitors here, and he ought not therefore to be deprived of any superior advantage which the law of this country may confer. He is to have the same rights which all the subjects of this kingdom are entitled to."

It is not doubted that, under the provisions of our bankrupt act, the amount collected by a foreign creditor under his execution levied after the adjudication, must be accounted for to the assignee, and proof be made and dividend taken upon the original debt without regard to the subsequent judgment thereon; or that such order be made in the premises as to produce substantially the same result. And it is believed that, even in the absence of any such statutory provision, the English courts would, upon the general principles of equity jurisprudence, limit the remedy of the foreign creditor so as to produce the like result. Westlake, in his admirable Treatise on Private International Law (page 271), says: "If, however, a creditor have attached abroad personal property of the bankrupt, he will not be suffered to receive dividends here without communicating what he has so received, and suspending the further progress of his foreign proceedings. 'The principle is,' said Lord Wensleydale in Cockerell v. Dickens, 3 Moore, P. C. 132, 1 Mont., D. & D. 45, 'that one creditor shall not take part of the fund which otherwise would have been available for the payment of all creditors, and at the same time be allowed to come in pari passu with other creditors, for satisfaction out of the remainder of the fund; and this principle does not apply when that creditor obtains by his diligence something which did not and could not form a part of that fund,' as the foreign land in the case supposed. But the principle applies to personality, to which the assignment in bankruptcy makes, even abroad, an effectual title in the absence of a competing claim by attachment. Hence it may be concluded that same doctrine would operate against even a foreign

creditor, who might, by foreign law, obtain possession of the bankrupt's personality, in spite of an intimation of the assignment. The res adjudicata would, as we have seen, protect his retention of the property from the suit of the assignees in England, a country to the bankrupt laws of which he is not personally subject; but our own law would have a right to impose its conditions on him if he sought to avail himself of it by proving his debt."

In Selkrig v. Davies, 2 Rose, 97, 99, Lord Eldon said: "If a Scotch creditor came in under an English commission, he must be considered to all intents and purposes as an English creditor;" and in the lord chancellor's opinion, on which his decision was affirmed in the house of lords, he said (2 Rose, 318): "It has been decided that a person cannot come in under an English commission without bringing into the common fund what he has received abroad." In Phillips v. Hunter, 2 H. Bl. 402, 414, Lord Chief Justice Eyre, referring to a decision of Lord Mansfield in Waring v. Knight, said: "It is there said if a man uses legal diligence in a foreign country and obtains a preference it cannot be helped; but if he afterwards came here for a dividend he shall first refund what he has so acquired by his legal diligence, and come in equally with the rest of the creditors, or not come in at all. This is the only fair and practical coercion that can be used against creditors abroad," &c. And see Hunter v. Potts, 4 Term R. 182; Sill v. Worswick, Id. [1 H. Bl.] 665. As before stated, it has been necessarily assumed, in the absence of all proof upon the subject, that the law of Canada is the same as ours in respect to the operation of foreign bankrupt laws upon movable property within its jurisdiction, but if it is not so and title to the property seized passed to the assignee, as it would do under the English rule, it is obvious that the right of the assignee to require the claimant to account for the value of such property is entirely clear; and surely this court should not, under such circumstances, compel the assignee to seek redress against such claimant in a foreign country, when it has the power, by its own action in these proceedings, to adjust and secure the rights of all parties in interest. No objection to the right of the claimant to prove its debt for the amount of the drafts included in the Canadian judgment was urged on the ground that they were merged in and extinguished by that judgment, or that proof could not be made upon a judgment recovered after the adjudication upon a demand which existed before the bankruptcy proceedings were commenced; questions upon which conflicting opinions have been given by different district judges. These questions were not raised upon the argument, and, therefore, no opinion upon them will now be expressed.

In the brief submitted on behalf of the creditor, an offer was made to withdraw its proof of its judgment, retaining the proof of the drafts not in judgment, if this court should be of the opinion that the claimant must account to the assignee for the amount realized in Canada before his proof could be allowed to stand; and permission to do so, in that event, was asked, on the ground that the debt in judgment and the residue of the debt due claimant were separate and entirely distinct debts. This, however, cannot be allowed, for the principles of equity on which the conclusions already stated rest require that, for the purposes of the present case, the whole debt of the creditor, at the time the bankruptcy proceedings were commenced, shall be considered the debt upon which this principle of equality among creditors is to operate. And this, I think, has also the sanction of English authority. Ex parte Dickson, 1 Rose, 98; Ex parte Hardenbergh, Id. 204.

It does not appear, upon the papers submitted, when the acceptances of the bankrupt became due, but it is alleged in the brief submitted on the part of the assignee, and was apparently assumed upon the argument, that none of the drafts became payable until after the adjudication in bankruptcy. It was also insisted that no damages could be allowed as against the acceptor of a draft payable here. On both these grounds it must be held that the four per cent. damages claimed cannot be allowed. Napier v. Shneider, 12 East. 420; Woolsey v. Crawford, 2 Camp. 445; 3 Kent, Comm. 116; Byles, Bills, 330. The proof filed, it is said, included interest up to the day of making the deposition, and it was insisted that the interest should not be allowed. It is very clear that the amount proved should not include interest beyond the day of adjudication; and this rule should be applied to the claimant's proof, and all other proofs in bankruptcy. An order in accordance with this opinion will be settled upon proper notice to the parties in interest.