William Edgerly, Appellant, *v.* Leonard Bush, Respondent.

The exercise of comity in admitting or restraining the application of the laws of another country rests in sound judicial discretion dictated by the circumstances of the case.

Where those laws are in contravention of the policy and the laws of this State, and to give them effect here would be to the inconvenience and injury of citizens, the courts, at least as between citizens of this State, are not required to give them that effect.

As between citizens of this State, the title to personal property cannot be divested without the assent or intervention and against the will of the owner, by the removal of the property from the State by another, having no authority from the owner, and its sale in another country under different laws.

B. executed to plaintiff a chattel mortgage upon a span of horses, both parties were then residents of this State, and the horses were in the State. B. subsequently took the horses to Canada where they were sold by a regular trader dealing in horses, the purchaser buying in good faith without knowledge of plaintiff's claim. Under the laws of Canada property cannot be reclaimed, from one so purchasing, without refunding to him the price paid. Defendant, a resident of this State, bought the horses in Canada from such purchaser; they were left in Canada. Upon refusal of defendant to deliver them up on demand, this action, for their conversion, was brought. *Held*, that plaintiff was entitled to recover.

*Cammell* v. *Sewell* (5 H. & N. 728), *Cranch* v. *McLachlin* (4 Johns. 34), *The Helena* (4 Rob. Ad. 3), *Greenwood* v. *Curtis* (6 Mass. 358), distinguished.

*Edgerly* v. *Bush* (16 Hun, 80) reversed.

(Argued April 16, 1880; decided June 1, 1880.)

Appeal from order of General Term of the Supreme Court, in the third judicial department, reversing a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 16 Hun, 80.)

This action was brought for the alleged conversion of a span of horses.

The facts, as found by the referee, are as follows:

One Stephen Baker was born in Lower Canada and resided there till 1873. In that year he went to Moriah, in New York, engaged there in business and resided there. While a resident of Moriah he executed to the plaintiff, a resident also of Moriah, on the 9th day of March, 1875, a chattel mortgage on property including the span of horses in question. This mortgage was duly filed March 10, 1875. The sum was payable in monthly installments, the first payment to be made June 1, 1875. The mortgage contained a clause that in case of non-payment, or in case the mortgagor or any other person should remove, secrete or dispose of the property, or if the mortgagee deemed it necessary, he might take possession, otherwise the property was to remain in the mortgagor's possession until the time for the first payment. No part of the sum secured has ever been paid. On the 10th of May, 1875, Baker returned to Lower Canada, taking the property with him, and there he has resided ever since. In November, 1875, at St. Jean Chrysostom, in Lower Canada, one Francis De Lisle, of that place, a regular trader, dealing in horses, sold the horses in question to one Bromley, a resident of Plattsburgh, in this State. Bromley made the purchase in good faith and in ignorance of the plaintiff's claim. The horses were in De Lisle's possession at the time and were at once delivered to Bromley and immediately brought by him to Plattsburgh. It does not appear how the horses came into the possession of De Lisle. On the 10th of December, 1875, Bromley learned that the plaintiff claimed to have a mortgage on the horses. To prevent their seizure, by the plaintiff, he immediately removed them to Canada for the purpose of trading back with De Lisle. On the 13th of December, 1875, in Canada, Bromley sold the horses to the defendant. At that time the defendant was a resident of this State. The horses in question remained in Canada, and since then they had not been brought into this State up to the time when this action was commenced. The defendant was

informed by Bromley that he had run the horses into Canada to avoid a claim or seizure under a mortgage. Plaintiff made a demand for the horses but defendant refused to deliver. Plaintiff did not reimburse, or offer to reimburse to defendant, the amount paid by him or by Bromley for the horses. Under the laws of Lower Canada, if an article of personal property, lost or stolen, be sold in a fair or market, or at a public sale, or purchased from a trader dealing in similar articles, the owner cannot reclaim it without reimbursing to the purchaser the price paid by him.

*M. D. Grover* for appellant. Plaintiff's title became absolute on the failure of the mortgagor to perform the conditions of the mortgage as to payment, or upon his attempt to remove, or secrete, or dispose of the mortgaged property, or any part thereof. (8 Johns. 96; 9 Wend. 80; 12 id. 61; 7 Cow. 290; 1 N. Y. Sup. Ct. [T. & C.] 562; *Conkey* v. *Hart*, 14 N.Y. 22; *Bissell* v. *Pearce*, 28 id. 252; *Hulstead* v. *Swartz*, 1 T. & C. 559; *Smith* v. *Post*, 1 Hun, 516; *Hall* v. *Sampson*, 35 N. Y. 277; *Hathaway* v. *Brayman*, 42 id. 324; *Bishop* v. *Cook*, 13 Barb. 326; *Dodge* v. *Potter*, 18 id. 193.) Evidence of the law of Canada was not admissible under the answer. (Moak's Van Santvoord's Pleadings, 436; *Phinney* v. *Phinney*, 17 How. 198; *Monroe* v. *Douglass*, 1 Seld. 447; *Thatcher* v. *Morris*, 1 Kern. 137; *Beatty* v. *Swarthout*, 32 Barb. 303; *Stowell* v. *Otis*, 71 N. Y. 37.) Printed statutes of a foreign State are, under the Code of Civil Procedure, presumptive evidence of the laws thereof. Such evidence must, however, be produced at the trial, it cannot be introduced in the appellate court. (*Hunt* v. *Johnson*, 44 N. Y. 27.) Effect will not be given by the courts of this State to foreign laws in contravention of the contracts or prejudicial to the rights of its citizens. (*Dyke* v. *Erie Railway*, 45 N. Y. 118; Story's Conflict of Laws, § 402; *Simpson* v. *Fogo*, cited in note, § 389; *Martin* v. *Hill*, 12 Barb. 631; *Fuller* v. *Steiglitz*, 27 Ohio, 355; 22 Am. Rep. 312; *Ingraham* v. *Geyer*, 13 Mass. 146; *Guillander* v. *Howell*, 35 N. Y. 657; *Van Buskirk* v. *Warren*, 34 Barb.

457; affirmed, 2 Keyes, 119; *Taylor* v. *Boardman*, 25 N. Y. 581; *Jones* v. *Taylor*, 30 Vt. 42; *Cole* v. *Brownell*, 31 id. 737.)

*Samuel Hand* for respondent. The defense arising under the law of Canada was admissible under the pleadings. (*Davis* v. *Hoppock*, 6 Duer, 254.) Bromley obtained good title to these horses by his purchase in ˋCanada. (Canada Code, art. 1489; 2 Bl. Com. 449, 450; Code, art. 2268.) The title to the property in Bromley was perfectly valid, even as against the plaintiff (treating him as the owner) in Canada, and hence must be so in this State, the law of sale of personal property depending upon the *lex loci contractus.* (Story's Conflict of Laws, §§ 241, 242 264; 2 Kent's Com. 454 *et seq.; Trimbey* v. *Vignier*, 1 Bing. N. C. 151, 159; *French* v. *Hall*, 9 N. H. 137; *Blanchard* v. *Russell*, 13 Mass. 4; *Martin* v. *Hall*, 12 Barb. 631, 633, 634; *Green* v. *Van Buskirk*, 7 Wall. 139.) Bromley, having purchased in good faith and having good title, could convey it to the defendant, whatever knowledge or notice of the plaintiff's claims upon the property the latter might have. (*Griffith* v. *Griffith*, 9 Paige, 315.) Plaintiff's claim being by its nature local and territorial, it is absolutely void here as against everybody but the mortgagor, unless kept filed and renewed in our offices. It, therefore, had no force and effect outside of the State. (*Guillander* v. *Howell*, 35 N. Y. 657; *Green* v. *Van Buskirk*, 7 Wall. 139; *Kelly* v. *Crapo*, 45 N. Y. 87.)

FOLGER, Ch. J. This is an action for the conversion of chattels. It is clear that if the plaintiff had the title to them, or the right to take immediate possession of them, the defendant exerted such dominion over them as was in law a conversion of them. It is also clear that the plaintiff had the title to the property by the laws of this State, and the right to the immediate possession of it.

The defendant must make his defense, if he may at all, upon a title got by Bromley from De Lisle, to which he has succeeded. De Lisle was a resident of Canada, and a trader dealing in ar-

ticles like the property in contest, and had actual possession of this property there as the proprietor of it.    Bromley bought it of him in good faith, gave value for it, and had not actual notice of the plaintiff's right to it.  The plaintiff has never reimbursed to Bromley or to the defendant the price paid for it by Bromley, nor has he offered so to do.

We think that these facts make a title in Bromley that the law of Lower Canada would uphold in that jurisdiction.    We deem it unnecessary to go into the detail of the interpretation. The question remaining is, which law is to prevail in determining this contest — that of Lower Canada, or that of this State ?

We take note that the plaintiff, and Baker from whom the plaintiff got title, were residents of this State when the transfer was made between them; that it was a transfer of property which was then here, whence it was taken without the consent of the plaintiff; that the transfer was made by mutual consent, and was executed and valid here; that the consideration for the transfer existed and passed here; that the plaintiff and defendant were and are residents of this State ; and that the forum in which they stand is here.    Thus the law of the domicile, and the law of the then *situs* of the property, and the law of the forum in which the remedy is sought, all concur to sustain the right of the plaintiff.    The law of the domicile of the owner of personal property, as a general rule, determines the validity of every transfer made of it by him.    By that law, as it exists in this case, the plaintiff became the owner of this property before it was taken beyond its operation.    By that law, too, an owner of property may not be divested of it without his consent, or by due process of law; plainly not by a dealing with it by others without his knowledge, assent, or procurement.    Still, another State may make provision by statute in respect to personal property actually within its jurisdiction.    Though a transfer of personal property, valid by the law of the domicile, is valid everywhere as a general principle, there is to be excepted that territory in which it is situated and where a different law has been set up, when it is necessary

for the purpose of justice that the actual *situs* of the thing be examined. (*Green* v. *Van Buskirk*, 7 Wall. 139.) Yet the statutes of that land have no extra-territorial force *proprio vigore*, though often permitted by comity to operate in another State for the promotion of justice, where neither the State nor its citizens will suffer any inconvenience from the application of them. The exercise of comity in admitting or restraining the application of the laws of another country must rest in sound judicial discretion, dictated by the circumstances of the case. (Per PARKER, Ch. J., *Blanchard* v. *Russell*, 13 Mass. 6.) It is plain that on no principle applicable to this case could the sale of the plaintiff's property by another having no authority from him, to his wrong indeed, be upheld, save that it was authorized by the statute of Lower Canada. So that the question is one entirely of the comity to be shown by the courts of this State to the enactments of another country. Those statutes not only enact the rule of market-overt as it prevails in general in England, but carry it further, and make, as in the city of London, every sale by a trader dealing in like articles as good as a sale at market-overt.

That rule does not obtain in this State. It has not been our policy to establish it. Our policy has been, and is, to protect the right of ownership, and to leave the buyer to take care that he gets a good title. It would be to the contravention of that policy, and to the inconvenience of our citizens, if we should give effect to these statutes of Lower Canada, to the divesting of titles to movables lawfully acquired and held by our general and statute law, without the assent or intervention, and against the will of the owner by our law. Notions of property are slight, when a *bona fide* purchase of stolen goods gives a good title against the original owner. (Per KENT, Ch. J., *Wheelwright* v. *Depeyster*, 1 Johns. 470.) We are not required to show comity to that extent; especially as it is to our citizens alone that we are administering justice.

There are judgments to the end that the law of the *situs* of the movable property will determine who is entitled to it, and the matter of comity is not taken into account. A notable one

is *Cammell* v. *Sewell*, in the Exchequer Chamber (5 H. & N.
728). But there the property had not been in England until
after the sale in Norway, and had never been in the possession
of the English owners. We doubt whether, in a case like this,
where, after a title to property has been acquired by the law
of the domicile of the vendor, and of the *situs* of the thing,
and of the forum in which the parties stand, in a contest be-
tween citizens of the State of that forum, it has ever been ad-
judged that such title has been divested by the surreptitious
removal of the thing into another State, and a sale of it there
under different laws. There are decisions that it has not,
however. (See *Taylor* v. *Boardman*, 25 Vt. 581; *Martin* v.
*Hill*, 12 Barb. 631; *French* v. *Hall*, 9 N. H. 137; *Lang-
worthy* v. *Little*, 12 Cush. 109.) It is sought to distinguish
these cases from that in hand; but they went upon a principle
that is not inapplicable here. In them, as here, a right to
movable property had been acquired in one State in a mode
efficient thereto by its laws. The property had been taken
into another State where that mode was not sufficient by its
law to create a right. But the right acquired by that mode
was upheld. In all the cases the property was taken away
from under the laws which gave the right, and placed under
the operation of laws that denied the right. We perceive no
difference in those cases from this that we have, save that in
those a creditor was seeking to recover his debt out of the
property, *in invitum* the right thus acquired. Here there is a
sale of the property between third parties despite the right.
In those it was sought to take away the right by a public
judicial sale. In this it is urged that the right has been de-
stroyed by a private sale. By the laws of those other States
the creditors would have succeeded. So here the third parties
would succeed by the law of Lower Canada. But in those
cases the law of the State where the right was acquired was
recognized, and force given to it in another State and under
different law. Why should it not be in this case?

Such cases as *Cranch* v. *McLachlin* (4 Johns. 34), and
*The Helena* (4 Rob. Ad. 3), do not conflict. In them there

were in the foreign country legal proceedings *in rem*, or analogous thereto, so that the question was of respect for the judicial proceedings of another country. The case of *Greenwood* v. *Curtis* (6 Mass. 358) recognized the principles upon which our judgment proceeds, but held that the facts did not call for the application of them.

The order of the General Term should be reversed, and judgment on report of the referee be affirmed.

All concur, except RAPALLO, J., not voting.

Order reversed and judgment affirmed.