IRWIN WEISSMAN et al., Appellants, *v.* BANQUE DE BRUXELLES, Respondent.

(Argued October 16, 1930; decided November 18, 1930.)

*Sidney S. Bobbè* for appellants. Under the law of New York, the defendant would be liable for the proceeds of the check. (*Wagner* v. *Battery Park Nat. Bank*, 228 N. Y. 37; *Ward* v. *City Trust Co.*, 192 N. Y. 61; *Fidelity Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225; *Sims* v. *United States Trust Co.*, 103 N. Y. 472; *Schmidt* v. *Garfield Nat. Bank*, 64 Hun, 298; 138 N. Y. 631; *Moch Co.* v. *Security Bank*, 176 App. Div. 842; 225 N. Y. 723; *New York Trust Co.* v. *Braham*, 213 N. Y. Supp. 678; *Nealis* v. *American Tube & Iron Co.*, 76 Hun, 220; 150 N. Y. 42; *Brouwer* v. *Harbeck*, 9 N. Y. 589.) The law of New York is the proper law to govern this transaction, because the corporation as owner of the check did nothing to submit its interest in the check to the law of Belgium. (*Edgerly* v. *Bush*, 81 N. Y. 199; *Goetschius* v. *Brightman*, 245 N. Y. 186; *Wylie* v. *Speyer*, 62 How. Pr. 107; *Hubbard* v. *Hubbard*, 228 N. Y. 81; *Wagner* v. *Battery Park Nat. Bank*, 228 N. Y. 37; *Ward* v. *City Trust Co.*, 192 N. Y. 61; *Austin* v. *Holland*, 69 N. Y. 571; *Diehl* v. *Becker*, 227 N. Y. 318; *Southworth* v. *Morgan*, 205 N. Y. 293; *McClemont*

v. *Order of Foresters*, 222 N. Y. 470; *Canada Southern Ry. Co.* v. *Gebhard*, 109 U. S. 527; *Hammond* v. *Hastings*, 134 U. S. 401; *Supreme Council of Royal Arcanum* v. *Green*, 237 U. S. 531.) In the event that the proper law is the law of the District of Columbia, it is to be presumed that that law is the same as the law of New York. (*St. Nicholas Bank* v. *State Nat. Bank*, 128 N. Y. 26; *First Nat. Bank* v. *National Broadway Bank*, 156 N. Y. 459; *International Text Book Co.* v. *Connelly*, 206 N. Y. 188.) Because the check was transmitted to defendant for collection and credit, title was never transferred to the defendant and, therefore, the law of the place of transfer is irrelevant. (*Briggs* v. *Central Nat. Bank*, 89 N. Y. 182; *National Butchers & Drovers Bank* v. *Hubbell*, 117 N. Y. 384; *Carson* v. *Federal Reserve Bank*, 226 App. Div. 225; *Bank of America* v. *Waybell*, 187 N. Y. 115; *St. Nicholas Bank* v. *National Bank*, 128 N. Y. 26; *Mackersy* v. *Ramsays*, 9 Cl. & F. 818.)

*W. Rice Brewster* for respondent. The law of New York is not the proper law to govern the transaction. (*Edgerly* v. *Bush*, 81 N. Y. 199; *Wylie* v. *Speyer*, 62 How. Pr. 107.) The law of the place of transfer is the proper law to govern the rights of the parties. (Wharton on Conflict of Laws [3d ed.], § 447-b; *Bradlaugh* v. *deRin*, [1870] 5 C. P. 473; *Alcock* v. *Smith*, [1892] 1 Ch. 238; *Embiricos* v. *Anglo-Austrian Bank*, [1905] 1 K. B. 677.) The place of transfer was Brussels, Belgium. (*Lee* v. *Selleck*, 33 N. Y. 615; Story on Conflict of Laws [8th ed.], 444; Minor on Conflict of Laws, 394.)

POUND, J. The defendant bank is a foreign corporation located and doing business in Belgium. Plaintiffs are the assignees of the receiver of a New York corporation known as Jose Bensaude, Jr., Inc.

On May 14, 1923, a check was drawn on the Treasury of the United States for $9,278.40 for refund of income

tax unlawfully collected, payable to the order of the Bensaude corporation and mailed by the Treasury Department in Washington, D. C., to such corporation in New York. The check was indorsed in the corporate name by the president of the corporation, Jose Bensaude, Jr., and afterwards indorsed "pay to the order of Banque de Bruxelles, Lisbon, June 1, 1923, Jose Bensaude, Jr." It was mailed to the Brussels bank and received by it for collection and credit to the personal account of Jose Bensaude, Jr. The bank indorsed it "pay to the order of the National Metropolitan Bank of Washington," forwarded it for collection, collected it in Washington through its correspondent bank, received the proceeds and credited the account of Jose Bensaude, Jr., therewith less collection charges. Bensaude afterwards withdrew the amount from the bank for his own use.

Under the decision in *Wagner Trading Co.* v. *Battery Park Nat. Bank* (228 N. Y. 37) a New York bank is liable for the amount of checks of a corporation, indorsed by the president thereof and deposited in such bank for his personal use unless such act is authorized or the corporation is negligent or has otherwise deprived itself of its right to recover against the bank. By the laws of Belgium, as pleaded and proved, no liability or duty of inquiry is imposed on a bank receiving such checks for collection and credit to the personal account of the corporate official.

The question is as to the law governing the transaction. Is it governed by the law of Belgium or does the common law as enunciated in the *Wagner* case apply? Not much that is decisive on the point may be found on the subject in reported cases, although it has been a fruitful subject of discussion and speculation by non-judicial authorities who, like courts, are found not always to be in accord. Wharton disputes Story, who approved for its simplicity and convenience a rule that all transfers of personal property *inter vivos* are governed by the rule of the

owner's domicile, and it is asserted that in modern business the law of the domicile of parties "would be the last thing that people would naturally consider in connection with their business." (Goodrich on Conflict of Laws, pp. 346, 347.)

Unquestionably the modern tendency favors a rule that the law of the situs of the property governs the creation and transfer of interests in tangible chattels, although we find FOLGER, Ch. J., saying quite needlessly in *Edgerly* v. *Bush* (81 N. Y. 199, 203): "The law of the domicile of the owner of personal property, as a general rule, determines the validity of every transfer made of it by him." A transfer of an interest in such property, effective by the law of the situs of the property at the time, is valid even though by the law of the State of domicile no title would have been acquired. (*Guillander* v. *Howell*, 35 N. Y. 657.) To the general rule a variant is sometimes stated to the effect that when property is brought into a State without the consent of the owner, such State does not have general jurisdiction to control the title to the property. The distinction rests upon an enlarged policy to protect the rightful owner from one who carries the owner's property into a jurisdiction where he can give good title under its laws.

In the leading case of *Edgerly* v. *Bush* (*supra*) the court holds that the title of an owner of chattels in New York is not divested by "the surreptitious removal of the thing into another state," and the sale of it there under different laws. Other grounds for the decision may be eliminated. In the American Law Institute, Conflict of Laws Restatement No. 2, section 52, the rule is stated as follows:

"§ 52. Chattels brought into state without consent of owner.

"(1) If a chattel belonging to a person who is not a national of or domiciled in a state is brought into the

state without his consent, the jurisdiction of the state over the chattel is limited to the enforcement of

" (a) rights growing out of acts done in the preservation of the property;

" (b) rights essential to the exercise of the state's police powers;

" (c) rights dependent upon the exercise of the power of eminent domain.

" (2) Except as stated in Subsection (1), the state may not subject the title of the owner of such chattel to the operation of its laws unless the chattel has become incorporated into the general mass of property located therein. Such incorporation takes place if the owner fails to remove the chattel from the state after reasonable opportunity to do so, or if the time named in the statute of limitations of the state in which it was taken from the owner has passed, or if some other act or omission of the owner has rendered it inequitable for him to remove it.

" (3) If by the law of the state from which the chattel is taken title would pass as the result of a transaction in another state, the title will pass though the chattel has been taken into the other state without the consent of the owner."

Professor Beale in his article " Jurisdiction over Title of Absent Owner in a Chattel " (40 Harvard Law Review, p. 805) criticises the *Edgerly* case as inadequate in reasoning but correct in its conclusion and upholds the rule of the Law Institute.

On the one hand, it is said: " The rule which looks to the law of the situs has the merit of adopting the law of the jurisdiction which has the actual control of the goods and the merit of certainty." (*Lees* v. *Harding, Whitman & Co., sub nom. Cooper* v. *Philadelphia Worsted Co.,* 68 N. J. Eq. 622.) On the other hand, it is reasoned that ownership is a legalized relation between a person and a thing; jurisdiction over the thing does not necessarily confer jurisdiction over the person or over his interest

in the thing unless he has done something to submit his interest to the law of the State where the thing is; and that if the State where the thing is has no jurisdiction over the absent owner's title, any provision of its law by which his interest as owner is affected will be given no force abroad. (Beale, *supra*.)

More weight should be given to a rule of reason than to a rule of convenience and we might accept the restatement as a logical evolution from the decision, if not the reasoning, in the *Edgerly* case if it were necessary to do so. Other considerations must be taken into account. It does not appear affirmatively that the check was taken from New York without the consent of the corporation and it may not be assumed that it was so taken.

The question then arises whether a check, being an evidence of debt merely, has a different situs than tangible personal property. (*People ex rel. Hoyt* v. *Commissioners of Taxes*, 23 N. Y. 224.) On this point the weight of authority is to the effect that if the chose in action has assumed the form of a commercial specialty, such as a bill of exchange or promissory note, its transfer is governed by the law of the place of the document at the time of the transfer. Bills and notes were developed under the law merchant as convenient instrumentalities of trade and commerce. They pass from hand to hand by indorsement and delivery and properly are governed by the rule relating to the transfer of tangibles. The rule of international law, that the validity of a transfer of movable chattels must be governed by the law of the country in which the transfer takes place, applies to the transfer of checks or bills of exchange by indorsement. (Goodrich on Conflict of Laws, p. 363 *et seq.* and cases cited; *Embiricos* v. *Anglo-Austrian Bank*, [1905] 1 K. B. 677.) If the Bank of Bruxelles had acquired full title to the check, the Belgium law might properly be applied to the completed transaction. It is unnecessary to pass on that point at this time. But in the case at bar no full transfer

of title to the check was made to the Bank of Bruxelles. It was received for the purpose of collection. The bank became the agent of the indorsee to collect the money from the United States Treasury. If it had not collected it would have lost nothing but its trouble. It collected the money in Washington, D. C.

In the absence of proof to the contrary it must be assumed that the law of Washington is the same as the common law of the State of New York governing commercial transactions. (*Saint Nicholas Bank* v. *State Nat. Bank,* 128 N. Y. 26, 33.) When the defendant bank accepted the check for collection for Bensaude it became his banking agent. When it went outside the jurisdiction to collect the check for him, as it did when it sent the check to Washington for collection there, it was in the same position as if it had sent its agent to New York to collect for the corporate official a check drawn on a New York bank payable to the corporation. The law of New York would govern the transaction and it would collect the money for Bensaude at its peril. As Bensaude had no authority to collect the check, title to the money in question never passed to the defendant. It received it in Washington without authority and must account therefor to the true owner. (*Wagner Trading Co.* v. *Battery Park Nat. Bank, supra.*) When collection is once made, the bank, which was an agent for collection, becomes the debtor of the depositor only as it acquires title to the money collected. The defendant bank collected paper for the account of its depositor, although the depositor had neither title to the paper nor power, in the existing situation, to confer title on it. (*Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394.)

No business man of intelligence would cash the check for Bensaude in New York without notice of the probability that he was assisting Bensaude to convert corporate funds to his personal use. The rule of the civil law is contrary in principle to that of the common law in this

regard and the two cannot be reconciled nor should they be for the purposes of this case. Banks are constantly taking chances in their business transactions and here the bank took the chance of being held responsible for aiding Bensaude in converting the funds of his corporation when it collected the check for him in the United States.

The judgment of the Appellate Division and that of the Trial Term should be reversed and judgment directed for the plaintiffs for the amount demanded in the complaint, with costs in all courts.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.