**UNITED STATES v. GUARANTY TRUST CO. OF NEW YORK.**

**No. 117.**

Circuit Court of Appeals, Second Circuit.
March 12, 1934.

[1] The late Judge HICKENLOOPER concurred in the result, though he did not see the opinion as announced.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Russel S. Coutant and Francis W. Phillips, both of New York City, of counsel), for appellant.

Martin Conboy, U. S. Atty., and George B. Schoonmaker, Asst. U. S. Atty., both of New York City.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The defendant presented to the Federal Reserve Bank at New York a check drawn on the Treasurer of the United States on October 29, 1921, and payable to the order of Louis Macakanja, 37 Sasava Kot Glina, Z. P. Maja, Jugo-Slavia, and received credit for it. The check then was indorsed in the name of the payee. The Federal Reserve Bank of New York presented the check to the Treasurer of the United States, who paid it by giving the Federal Reserve Bank credit for it in December, 1921.

About April 27, 1926, the plaintiff learned that the payee's indorsement on the check was forged, and thereupon demanded reimbursement from the defendant of the money it paid upon presentment of the check. Upon denial by the defendant of liability, this suit was brought.

The essential facts were stipulated, and are that the indorsement of the payee was forged in Jugo-Slavia where the check was then transferred and delivered to the Merkur Bank which took it without notice of the forgery and for a valuable consideration on or about November 30, 1921. This bank acted in good faith and without negligence. It indorsed and transferred the check to the Slavenska Bank D. D. Zagreb, in Jugo-Slavia, for a valuable consideration. The Slavenska Bank acted in good faith without notice of the forgery and without negligence. This bank indorsed the check in Jugo-Slavia to the order of the defendant on or about December 3, 1921, and forwarded it to the defendant in New York. The defendant received it on or about December 21, 1921, and took it for value in good faith without notice of the forgery and without negligence.

It was stipulated that:

"The law of the Kingdom of Jugo-Slavia in reference to checks and bills of exchange is as follows:

"Upon the negotiation and transfer of a check or bill of exchange each transferee, endorsee, or holder thereof obtains a good title to the instrument and acquires the right to collect and retain the proceeds thereof, even though the endorsement of the payee is forged where

"(a) The instrument purports to bear a chain or series of endorsements from the payee of the instrument to the transferee, holder or endorsee thereof; and

"(b) The said transferee, holder or endorsee gives valuable consideration for the instrument; and

"(c) The said transferee, holder or endorsee takes the instrument without actual notice of any forgery or other defect in the instrument and is not guilty of any fraud or gross negligence in taking the instrument.

"The law of Jugo-Slavia further provides that

"(a) When an endorsement follows a blank endorsement there is a presumption of law that the person who executed the endorsement has acquired title to the instrument under the blank endorsement; and

"(b) The transferee, holder or endorsee of the instrument is under no duty or obligation to investigate the genuineness of prior endorsements.

"Under the law of Jugo-Slavia, an endorser does not guarantee or warrant the genuineness of prior endorsements.

"The law, as above stated, was in 1921 and still is in full force and effect in Jugo-Slavia."

Before the defendant presented the check for payment it stamped its indorsement upon it with the words "Previous endorsements guaranteed."

It is conceded that, if the forged indorsement had been in this country, subsequent holders of the check would have acquired no title and that the plaintiff could have recovered upon the theory that the defendant had no right to receive payment under the law of the District of Columbia where this check was payable and so had been unjustly enriched. But under the law of Jugo-Slavia the Slavenska Bank had a good title even though the payee's indorsement was forged. By transferring that title to the defendant, it put the defendant in the same position to demand and receive payment that the Slavenska Bank was in when it had the check. The decision, accordingly, turns on whether or not the law of Jugo-Slavia controls and is to be given effect.

This question is certainly not without difficult implications. The cases in which it has arisen are surprisingly few. While it may truly be said that in dealing with commercial paper we are concerned primarily with the obligations of parties to it rather than strictly with title as the term is applied to tangible chattels, the obligations of the parties must nevertheless be dependent upon the title which the holder of the paper has acquired. In deciding what title this defendant had when it presented the check for payment we may have regard to the general rule of law relating to the transfer of title to chattels. The analogy in many respects is close. It is clear that the validity of a transfer of title to chattels is governed by the law of the country in which the transfer takes place. Banque de France v. Chase Nat. Bank of City of New York (C. C. A. 2) 60 F.(2d) 703. The rule has been applied to the transfer of stock certificates, Direction Der Disconto-Gesellschaft v. U. S. Steel Co., 267 U. S. 22, 45 S. Ct. 207, 69 L. Ed. 495; New York Trust Co. v. Island Oil & Transport Co. (C. C. A.) 33 F.(2d) 104, 79 A. L. R. 1007; and to the transfer of promissory notes; Brook v. Vannest, 58 N. J. Law, 162, 33 A. 382; Mackintosh v. Gibbs, 81 N. J. Law, 577, 80 A. 554, Ann. Cas. 1912D, 163;

Dundas et al. v. Bowler et al., 8 Fed. Cas. 30, No. 4,141. In Guernsey v. Imperial Bank of Canada (C. C. A.) 188 F. 300, 40 L. R. A. (N. S.) 377, it was recognized that the indorsement of commercial paper is an independent contract whose validity depends upon compliance with the law at the place of indorsement. See, also, McClintick v. Cummins, 15 Fed. Cas. 1272, No. 8,699; Minor, Conflict of Laws, § 165; Tentative Restatement of Conflict of Laws, American Law Institute, § 282.

This check was sent by the maker to Jugo-Slavia. It is apparent that its transfer by indorsement and delivery in that country was to be expected. There is no discernible hardship in applying the general rule above set forth and testing the title acquired by transferees by the law of that country. Nor does the fact that the payee's indorsement was forged require us to take a different attitude. Prof. Lorenzen, in The Conflict of Laws Relating to Bills and Notes, discusses this question at pages 139 and 140, and, after pointing out that the Anglo-American law and that of the continental countries reflect different views as to whether "the owner of a negotiable instrument whose signature has been forged or whether the party who in good faith acquired such instrument should be protected," reaches the conclusion that it is all merely a question of commercial policy, and that no moral issues are involved which would prevent our enforcing the continental rule. He says further, "In the opinion of the author the uniform act should provide that each party be held if the holder of the instrument has acquired title in accordance with the municipal law of the state where such party's contract was made, but that title acquired in conformity with the law of the place of transfer shall be recognized with respect to all parties." To this we agree, and do so the more readily because in England, where forged indorsements are treated as they are with us, the question here presented was decided in the case of Embiricos v. Anglo-Austrian Bank, 1 L. R. (1905) 1 K. B. 677. A check was drawn in Roumania on a bank in London where it was payable to the plaintiffs who indorsed the check in Roumania specially to a London firm. It was then stolen and presented to a bank in Vienna, Austria, with the forged indorsement of the London firm to which it had been made payable by the special indorsement, and the Vienna bank cashed it in good faith without notice of the forgery. The Vienna bank indorsed it to a bank in London to which the check was at once sent

by mail. It was unanimously held in the English Court of Appeal that the validity of the transfer to the Vienna bank should be determined in accordance with the law of Austria. To like effect is the decision in Alcock v. Smith (1892) 1 Ch. 238. And this rule is recognized in New York also. In Weissman et al. v. Banque de Bruxelles, 254 N. Y. 488, 173 N. E. 835, 837, Judge Pound said: "The rule of international law, that the validity of a transfer of movable chattels must be governed by the law of the country in which the transfer takes place, applies to the transfer of checks or bills of exchange by indorsement." Compare Hutchinson v. Ross, 262 N. Y. 381, 187 N. E. 65.

■■ The action of the defendant in stamping the statement "Previous endorsements guaranteed" on the check before presenting it for payment is urged as a basis of recovery. Ordinarily such a warranty means that the indorser warrants that previous indorsements are genuine and payment made in reliance upon the warranty may be recovered upon proof that such an indorsement is not. Onondaga County Savings Bank v. U. S. (C. C. A. 2) 64 F. 703; United States v. National Exchange Bank, 214 U. S. 302, 29 S. Ct. 665, 53 L. Ed. 1006, 16 Ann. Cas. 1184; Farmers' State Bank v. United States (C. C. A.) 62 F.(2d) 178. But this is so when previous indorsements must be genuine to give a good title to the one who guarantees them. The guaranty is one of title rather than of authentic penmanship or its equivalent. When, as here, the indorsements are of the same sufficiency in law that they would be if all were genuine, the warranty is in accord with the legal situation, and there is no breach.

Judgment reversed.