suicide. Contributory negligence, as a matter in mitigation of damages, is not present.

(4)

 Recovery under the statute and case law, on behalf of the children of deceased, is limited to fair and reasonable compensation to them for loss of their father's support, maintenance and education, during their minority. The father was 35 years of age, earning $55 a week. The two children are now ten and six years of age. One would have a claim for support for eleven years and the other for fifteen years. The death statute qualifies recovery "having regard to the mitigating and aggravating circumstances attending" the default, etc. We find no aggravating circumstances. That there are no mitigating circumstances results from operation of law. The prime fault leading to the death of Bochantin was the failure of his employer to take the usual precautions of requiring their employees to wear life preserver coats, as is customary on barges of this character. The employer's negligence does not relieve respondent. Respondent's liability results from extending to one engaged in the work deceased was doing the protection that originated because of dangers surrounding the work of those who went to sea in a ship's crew—a situation that bears little resemblance to that at the scene of deceased drowning, except to the extent decisions of our highest Court have made it so. We conclude recovery should, at least, be to the extent, it is possible to contemplate, the minor children would have benefited in a reasonable and necessary pecuniary manner at the instance of their father until their majority, considering their station in life. We conclude a fair estimate would be Forty Dollars ($40) a month, as an average expenditure, for the purposes noted, for each of the two children during their minority. Accordingly judgment will go for libelant for the sum of Twelve Thousand Four Hundred Eighty Dollars ($12,480).

Let the parties settle findings of facts, conclusions of law, and judgment, accordingly.

## UNITED STATES v. ARNHOLD AND S. BLEICHROEDER, Inc. et al.

United States District Court
S. D. New York.
March 15, 1951.

States; that said money orders were lost by or stolen from the original purchasers; that the signatures of the payees were forged and that the money orders were presented to and paid by Adler & Co. of Zurich, Switzerland, which transmitted them to the defendant Arnhold and S. Bleichroeder, Inc., which then deposited some with the defendant Central Hanover Bank & Trust Company and others with the Chase National Bank; that each of the banks received payment of the amounts of the money orders from the Postmaster at New York upon their presentation bearing endorsements "prior endorsements guaranteed".

The second affirmative defense interposed by the defendant Arnhold and S. Bleichroeder, Inc., alleges that under Swiss law good title passes to a banking house which in the ordinary course of business, in good faith and for substantial value, purchases money orders issued by the United States Post Office Department; that Adler & Co. was such a purchaser and had good title, which in turn transmitted the money orders to defendant Bleichroeder, Inc., which validly collected them for the account of said Adler.

The present motion is by the defendant Bleichroeder, Inc. for the issuance of letters rogatory to take depositions in Switzerland in support of the foregoing defense. The government opposes the motion on the ground that the defense is invalid. No motion was made by it within twenty days after service of the answer containing the defense but the Court is requested on its own motion to strike it as insufficient. Rule 12(f) of Federal Rules of Civil Procedure, 28 U.S.C.A.

The basis of the government's claim of insufficiency of the affirmative defense is (1) postal money orders are issued in the exercise of governmental functions and so they are not negotiable instruments subject to defenses permitted by the law merchant to bona fide purchasers for value; and (2) assuming they are ordinary commercial paper issued by the government, Federal law and not Swiss law applies.

██ The defendant Bleichroeder, Inc. relies principally upon United States v.

Irving H. Saypol, U. S. Atty., New York City, Ethel S. A. Davidson, Asst. U. S. Atty., New York City, of counsel, for plaintiff.

Van Vorst, Siegel & Smith, New York City, Edgar E. Harrison, New York City, of counsel, for defendants.

WEINFELD, District Judge.

This action was instituted by the United States of America to recover payments made on forty-two forged postal money orders which had been purchased by members of the Armed Forces overseas. The complaint alleges that certain of the money orders were payable to the soldiers themselves and others to payees in the United

Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 223, 79 L.Ed. 415, as supporting the sufficiency of its defense. In that case a check drawn on the Treasurer of the United States had been mailed to the payee in Yugoslavia, where it was transferred under a forged endorsement. The successive steps of the transfer of the instrument leading to its final payment by the government followed the pattern of the instant case. Following payment and upon discovery of the forgery, an action by the government was instituted to recover the payment so made. The defendant interposed a defense substantially similar to that set up herein, that under Yugoslavian law a transferee of a check taking without actual notice of forgery and in the absence of fraud or gross negligence acquired good title. The Court, while it recognized the general rule that under our law a subsequent bona fide holder for value without notice of the forgery would acquire neither title to the instrument nor the right to enforce payment, nevertheless, held: "But under settled principles of conflict of laws, adopted by both federal and state courts, the validity of a transfer of a chattel brought into a country by the consent of the owner is governed by its law; and that rule applies to negotiable instruments. Embiricos v. Anglo-Austrian Bank, (1905) 1 K.B. 677; Weissman v. Banque De Bruxelles, 254 N.Y. 488, 494, 173 N.E. 835. Compare Direction der Disconto-Gesellschaft v. United States Steel Corp., 267 U.S. 22, 28, 45 S.Ct. 207, 69 L.Ed. 495. See Queensboro Nat. Bank v. Kelly [2 Cir.], 48 F.2d 574, 576 [87 A.L.R. 1172]. Here, the rule is particularly applicable; for the Government, having made the check payable to one therein described as resident in Yugoslavia and having mailed it to his Yugoslavia address, must be deemed to have intended that it should be negotiated there, according to the law of that country. It was thereby given something of the quality of a foreign bill; although technically the check was delivered within the District when mailed there. * * * As the Government sent the check to Yugoslavia and the forged indorsement and the transfers of the check were made there, its law governs the va-

lidity of the transfer; and the banks acquired, at least, a good title to the check."

██ It is true, as the government contends, that money orders are not negotiable instruments. United States v. Stockgrowers Nat. Bank, C.C., 30 F. 912; Bolognesi v. United States, 2 Cir., 189 F. 335, 36 L.R.A.,N.S., 143; United States v. Northwestern National Bank & Trust Co., D.C., 35 F.Supp. 484. However, as indicated in United States v. Guaranty Trust Co., supra, the rule applies to chattels generally and not merely to negotiable instruments. It has also been applied to stock certificates, Direction der Disconto-Gesellschaft v. United States Steel Corp., 267 U.S. 22, 45 S.Ct. 207, 69 L.Ed. 495, drafts, Queensboro Nat. Bank v. Kelly, 2 Cir., 48 F.2d 574, 87 A.L.R. 1172, securities, Hutchison v. Ross, 262 N.Y. 381, 187 N.E. 65, 89 A.L.R. 1007 and see cases collated in United States v. Guaranty Trust Co., 2 Cir., 69 F.2d 799, affirmed 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415, Restatement of Conflict of Laws, Section 257. Therefore, the fact that the money orders are not negotiable instruments does not preclude the application of the general rule stated in the Guaranty Trust Co. case.

The government further contends since the money orders were issued in the exercise of its sovereign power, the question of title must be decided according to Federal law. The government here relies on Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838. That was an action by the United States of America to recover the amount of a check on which the name of the payee had been forged. The check had been issued for services performed under the Federal Emergency Relief Appropriation Act of 1935, 15 U.S.C.A. §§ 721–728, and had been cashed by J. C. Penney & Co. in Pennsylvania by a person representing himself as the payee and then endorsed by it to the Clearfield Trust Co., which presented it and received payment. The question was whether Federal or Pennsylvania law governed. The Supreme Court held, 318 U.S. at page 366, 63 S.Ct. at page 575, "The rights and duties of the United States on commercial paper which it issues are gov-

erned by federal rather than local law. When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power." Here the Court was considering the question of Federal as against local law and the rationale of its decision is found in the statement 318 U.S. at page 367, 63 S.Ct. at page 575: "The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law, even without the conflict of laws rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain."

The Supreme Court did not overrule or modify its decision in United States v. Guaranty Trust Co., supra, although it is now contended by the government that the latter case has been by-passed and distinguished in all subsequent rulings. However, it is sufficient to note that in deciding the Clearfield Trust Co. case it distinguished the Guaranty Trust Co. case, stating 318 U.S. at page 367, 63 S.Ct. at page 575, "That case was concerned with a conflict of laws rule as to the title acquired by a transferee in Yugoslavia under a forged endorsement. Since the payee's address was Yugoslavia, the check had 'something of the quality of a foreign bill' and the law of Yugoslavia was applied to determine what title the transferee acquired."

 The government also urges that even if United States v. Guaranty Trust Co. is still good law it can be distinguished from the case at hand merely on its factual situation. That may well be but no such facts are before the Court at this time. Considerable factual matter is contained in the government's briefs and affidavits which do not appear in the pleadings. These the Court may not consider on a motion to strike which is limited to the pleadings. Sherover v. John Wanamaker, New York, D.C., 29 F.Supp. 650; Thermo-Plastics Corp. v. International Pulverizing

Corp., D.C., 42 F.Supp. 408. No motion has been made to test the sufficiency of the defense or for judgment on the pleadings and the present disposition is confined to the defendant's motion for letters rogatory. Certainly it is not so clear that the defense is insufficient as a matter of law as to require the Court in considering that motion, on its own initiative, to strike the defense. Such motions are not favored for the determination of disputed and substantial questions of law. Burke v. Mesta Machinery Co., D.C., 5 F.R.D. 134; Radtke Patents Corporation v. C. J. Tagliabue Mfg. Co., Inc., D.C., 31 F.Supp. 226; Hespe v. Corning Glass Works, Inc., D.C., 9 F.Supp. 725; Barrom v. Roux Laboratories, Inc., D.C., 3 F.R.D. 175. The matter should be left open for determination by the Trial Court.

The motion for letters rogatory is granted.

Settle order on notice.