## SHERIDAN v. UNITED STATES.
### No. 9970.

Circuit Court of Appeals, Sixth Circuit.

Nov. 19, 1945.

No appearance for appellant

Vincent Fordell, of Detroit, Mich. (John C. Lehr, Francis X. Norris, Vincent Fordell, and Kenneth W. Smith, all of Detroit, Mich., on the brief), for appellee.

Before ALLEN and MARTIN, Circuit Judges, and RAYMOND, District Judge.

MARTIN, Circuit Judge.

Upon his trial in the district court for alleged violation of the National Stolen Property Act, U.S.C.A., Title 18, Sec. 415, Paul Davis Sheridan waived counsel proffered him by the trial court and chose to defend himself. He was convicted by the verdict of a jury and was sentenced by the district judge to concurrent terms of imprisonment of five years on each of the three counts of the indictment.

From the indictment and from the approved stipulated statement of evidence filed as a supplemental transcript of record, it appears that, on July 19, 1943, Sheridan obtained money and other value by negotiating in Jackson, Michigan, three falsely made checks. On Sunday evening, July 18, 1943, he registered at the Otsego Hotel in that city. On the next day, when check-

ing out of the hotel at an unspecified hour, Sheridan presented to its chief clerk a check for $50.00, dated July 18, 1943, drawn on the First National Bank of Boston, Massachusetts, payable to cash, signed as maker by P. H. D. Sheridan, and bearing the endorsement of "P. H. D. Sheridan, 230 Park Avenue, New York." After deducting $3.50 in payment of Sheridan's hotel bill, the hotel clerk gave him $46.50 in cash for the check, which later was returned unpaid to the hotel.

Around noon of the same day, Sheridan entered a jewelry store in Jackson and purchased from the manager, for $36.00, two articles of luggage which he said he wished to buy for his son at Camp Custer, Michigan. He presented in payment a check for $62.50, dated July 15, 1943, drawn on the First National Bank of Cape Girardeau, Missouri, payable to P. H. D. Sheridan, and purporting to be signed as maker by "U. S. E. F. C. 14A A. J. Davis, Commissioner." When offering this check, Sheridan exhibited two bank books. The store manager did not see him endorse the check, but accepted it in payment for the luggage and handed him $26.50 in change. The check, deposited by the jeweler in the Jackson Bank and Trust Company, was later returned unpaid.

The third transaction, also around noon of July 19, 1943, embraced in one of the three counts of the indictment, was the obtaining by Sheridan of $62.50, in cash, by presentation to the National Bank of Jackson of a check for $62.50, dated July 15, 1943, drawn on the First National Bank of Cape Girardeau, Missouri, payable to P. H. D. Sheridan and purporting to be signed as maker by "U. S. E. F. C. 14A A. J. Davis, Commissioner." The records of the bank show that the check was forwarded for payment to the bank upon which it was drawn and was later returned, marked "unpaid," to a basket on the desk of the assistant cashier of the National Bank of Jackson, Michigan. This official, as an expert, explained to the jury the various rubber stamp endorsements appearing on the three checks described in the respective counts of the indictment, and testified that it was obvious that all three checks had been forwarded to the drawee banks and had been returned to the forwarding banks unpaid, and marked: "No Account." The victims of Sheridan's transactions were not reimbursed for their losses.

An agent of the Federal Bureau of Investigation testified that, from an investigation conducted in Washington, D. C., it was ascertained that the United States Department of Commerce has no such agency as "U. S. E. F. C. 14A," and that "A. J. Davis, Commissioner," is a nonexistent person.

Sheridan cross-examined the Government's witnesses, but did not take the stand in his own behalf. When the district attorney rested, the defendant moved that the case be dismissed on the ground that the Government had failed to establish that the checks involved were in fact false, and upon the further ground that the checks had not been transported, or caused to be transported, by him in interstate commerce within the meaning of the Federal statute upon which the indictment was based. The motion to dismiss was denied.

A motion for new trial, subsequently made, was overruled; and, on this appeal from the judgment of sentence and conviction below, Sheridan presents the same points which he urged in the trial court. Only one of these assignments of error need be discussed. The vital issue which he raises is that he was improperly convicted under U.S.C.A., Title 18, Section 415,[1] of transporting or causing to be transported in interstate commerce falsely made securities, where the evidence discloses that "the only use of interstate commerce was by banks which, after cashing certain checks, transported them to obtain reimbursement."

Sheridan preferred to represent himself personally on his appeal to this court, and was permitted to appear in propria persona at the hearing. He made an oral argument and has filed three briefs in support of his points on appeal. He insists that his conviction and sentence should be set aside upon the controlling authority of Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 157 A.L.R 406, decided on December 4, 1944, since he was tried and sentenced in the district court. In that case, the Supreme Court, in a five to four decision, reversed a conviction under the Mail Fraud Statute, U.S.C.A., Title 18, Sec. 338, upon the ground that an essential element of the offense is that the mails be used for the purpose of executing the fraudulent scheme; and that, the participants in the scheme having obtained money by cashing checks at banks which thereupon became holders in due course, subsequent mailings of the checks by the banks to the drawees were not for the purpose of executing the scheme within the meaning of the statute.

Considering it a fair inference that the defendants who drew the checks and those who cashed them believed that the banks which took them would mail them to the banks on which they were drawn, the Supreme Court, nevertheless, said (323 U.S. 94, 65 S.Ct. 150, 157 A.L.R. 406): "The banks which cashed or credited the checks, being holders in due course, were entitled to collect from the drawee bank in each case and the drawer had no defense to payment. The scheme in each case had reached fruition. The persons intended to receive the money had received it irrevocably. It was immaterial to them, or to any consummation of the scheme, how the bank which paid or credited the check would collect from the drawee bank. It cannot be said that the mailings in question

1 "Whoever shall transport or cause to be transported in interstate or foreign commerce any goods, wares, or merchandise, securities, or money, of the value of $5,000 or more theretofore stolen, feloniously converted, or taken feloniously by fraud or with intent to steal or purloin, knowing the same to have been so stolen, feloniously converted, or taken, *or whoever with unlawful or fraudulent intent shall transport or cause to be transported in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, or counterfeited,* or whoever with unlawful or fraudulent intent shall transport, or cause to be transported in interstate or foreign commerce, any bed piece, bed plate, roll, plate, die, seal, stone, type, or other tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security, or any part thereof, *shall be punished by a fine of not more than $10,000 or by imprisonment for not more than ten years, or both: Provided,* That the provisions of this section shall not apply to any falsely made, forged, altered, counterfeited, or spurious representation of (1) an 'obligation or other security of the United States' as defined in section 261 of this title or (2) an obligation, bond, certificate, security, treasury note, bill, promise to pay, or bank note, issued by any 'foreign government' as defined in section 288 of this title, or by a bank or corporation of any foreign country. May 22, 1934, c. 333, § 3, 48 Stat. 794, as amended Aug. 3, 1939, c. 413, § 1, 53 Stat. 1178." [Italics supplied.]

were for the purpose of executing the scheme, as the statute requires." The following authorities were cited: McNear v. United States, 10 Cir., 60 F.2d 861; Dyhre v. Hudspeth, 10 Cir., 106 F.2d 286; Stapp v. United States, 5 Cir., 120 F.2d 898; United States v. McKay, D.C., 45 F.Supp. 1001 (opinion of District Judge Miller, sitting by designation in the Eastern District of Michigan). The Supreme Court stated further that cases such as United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836, where the mails are used prior to and as one step toward the receipt of the fruits of the fraud, were to be distinguished, as were likewise those where the use of the mails is a means of concealment so that further frauds which are part of the scheme may be perpetrated. Examples were cited: United States v. Lowe, 7 Cir., 115 F.2d 596; United States v. Riedel, 7 Cir., 126 F.2d 81; Dunham v. United States, 5 Cir., 125 F.2d 895.

The dissenting Justices in the Kann case were of opinion that the fraudulent scheme had not reached fruition at the time the collecting bank cashed the checks, but that it was a continuing venture, and that the use of the mails was crucial to its total success.

In the aspect of both the majority and the minority views as expressed in the Kann case, that authority would plainly indicate that the judgment of sentence and conviction should be reversed in the instant case. Here, Sheridan obtained the full fruits of his fraud without the use of the United States mails or any other means of interstate transportation. His fraudulent scheme had been fully consummated before there was any interstate transportation of the falsely made checks, defined as securities within the sweep of the statute. It is no more logical to say that Sheridan caused the checks to be transported in interstate commerce than it would have been to say that the conspiring defendants in the Kann case caused the checks to be mailed for the purpose of executing their fraudulent scheme; inasmuch as the victims cashed the checks falsely made by Sheridan and became holders in due course, just as did the banks which cashed or credited the checks in the Kann case.

The point made by the Government that the language of the two statutes is different seems immaterial; for, in the one, mailing or *causing to be mailed* is the gist of the offense, and in the other transporting or *causing to be transported in interstate commerce* is the essential ingredient of the crime. As was said in Pines v. United States, 8 Cir., 123 F.2d 825, 829: "The gist of the offense, however, is the transportation of these described spurious instruments in interstate commerce. Having them in possession or even attempting to pass them as genuine was not a Federal offense under this statute. It was therefore of vital importance to prove that the instruments were transported or caused to be transported by someone in interstate commerce." In that case, the record on review was found to disclose insufficient evidence of interstate transportation to constitute proof of the corpus delicti, and accordingly it was held that the trial court should have granted the motion of the defendant for a directed verdict. The same is true here. The frauds perpetrated by Sheridan may be punishable as crimes by the laws of Michigan, but are not cognizable under Federal law.

The judgment of conviction and sentence is reversed, with direction that the case be dismissed.