UNITED STATES v. LEMONS.
No. 15749.

District Court, W. D. Missouri, W. D.
Oct. 12, 1946.

Sam M. Wear, U. S. Atty., of Kansas City, Mo., for plaintiff.

Elmo B. Hunter, of Kansas City, Mo., for defendant.

RIDGE, District Judge.

An indictment was returned in this Court on October 1, 1943, charging defendant, in 7 counts, with having violated the "National Stolen Property Act." Specifically, defendant was charged, under Sec. 415 of T. 18 U.S.C.A., in each count of said indictment, with having knowingly, wilfully, feloniously and unlawfully transported or caused to be transported in interstate commerce, from Kansas City, Missouri, to Topeka, Kansas, a certain falsely-made, forged and counterfeit security, to-wit, a certain check drawn upon the Fidelity Savings Bank of Topeka, Kansas, which defendant well knew to be falsely-made, forged and counterfeited. A copy of the check so alleged to have been transported, or caused to be transported, is set out in each count of the indictment. At arraignment under said indictment defendant entered a general plea of guilty and was sentenced to 6 years on each count of the indictment, to run concurrently. Under said sentence and judgment defendant was committed to the United States Penitentiary, Leavenworth, Kansas, where he is now confined.

Defendant has filed motion to set aside and quash the judgment and sentence so entered against him on his plea of guilty. In said motion defendant alleges that the judgment, sentence and commitment issued by this Court are illegal and void because the Court was without jurisdiction to render the judgment and sentence so assessed and entered against defendant. It is defendant's contention that all of the acts charged against him, in the indictment in question, did not, in any manner, violate the National Stolen Property Act, 18 U.S.C.A. § 413 et seq., in that the acts charged against the defendant did not involve any act of transporting, or causing to be transported, in interstate commerce any falsely-made, forged or counterfeited securities. Stated in other words, it is defendant's contention that all of the checks, which he is charged to have transported or caused to have been transported in interstate commerce, were forged and presented by him for payment to certain individuals, firms and corporations in Kansas City, Missouri, and that the money he received from such forged instruments was paid to him by said parties in said city; that having so presented said checks and received the money thereon in Kansas City, Missouri, the crime committed by him, if any, was then complete and he cannot be charged or held for any act of the person who cashed such checks, or the act of any bank which thereafter became the holder thereof, and transported, or caused said checks to be transported, in interstate commerce for payment by the bank on which they were drawn. In support of said contention defendant relies upon the decision of the 6th Circuit Court of Appeals in Sheridan v. United States, 152 F.2d 57, and the decision of the Supreme Court of the United States in Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88, 157 A.L.R. 406.

In Sheridan v. United States, supra, the 6th Circuit Court of Appeals held that a defendant who obtained money, or other value, by negotiating, in Jackson, Michigan, three falsely-made checks drawn on banks located outside of Michigan, was not guilty of having violated the National Stolen Property Act, and particularly Sec. 415 of T. 18 U.S.C.A. The decision in the Sheridan case is that a person who executes and issues a spurious, forged and fraudulent instrument in one state, and negotiates said instrument in such state and receives money or other things of value therefor, cannot be charged with the act of the person to whom such instrument was transferred, when it is transported, or caused to be transported, in interstate commerce to a bank in another state on which said check is drawn. Under such circumstances, the 6th Circuit Court of Appeals holds that the fraudulent scheme, by which a person receives money, or thing of value on a forged instrument, is fully consummated before any interstate transportation of such instrument occurs if, after cashing a check, the person who

cashes the same, or any bank which becomes the holder thereof, thereafter transports, of causes said check to be transported in interstate commerce to the bank on which it was drawn, located in some other state for payment. The 6th Circuit Court of Appeals, relying on the decision of the United States Supreme Court in the Kann case, supra, says: "It is no more logical to say that Sheridan caused the checks to be transported in interstate commerce than it would have been to say that the conspiring defendants in the Kann case caused the checks to be mailed for the purpose of executing their fraudulent scheme; inasmuch as the victims cashed the checks falsely made by Sheridan and *became holders in due course,* just as did the banks which cashed or credited the checks in the Kann case." [152 F.2d 59.] (Underscoring supplied.)

In Kann v. United States, supra, the United States Supreme Court held that under Sec. 215 of the Criminal Code, 18 U.S.C.A. § 338, an essential element of the offense denounced by said statute as a crime is that the use of the mails be for the purpose of executing the fraudulent scheme. In said case the petitioner and 6 others were indicted for using the mail in execution of a scheme to defraud. At the trial the evidence established that the petitioner and his codefendants devised a plan and scheme whereby they falsely and fraudulently induced certain checks to be issued by a contractor who had a contract with the Triumph Explosives, Inc., for the building of a factory on land conveyed to Triumph by several of the defendants in said case. After said land was conveyed to Triumph said defendants falsely represented to the contractor that they were the owners of timber located on the land in question, and fraudulently induced such contractor to pay them the sum of $12,000 for such timber. In making such payment the contractor issued his check, payable to their order, drawn on the Industrial Trust Company of Wilmington, Delaware. The specific charge alleged to have been in violation of Sec. 215 of the Criminal Code was that defendants caused to be placed in the Post Office at Elkton, Maryland, the check so given to them by said contractor, drawn on the Trust Company at Wilmington, Delaware, for payment. The check executed by the contractor was a valid, lawful, negotiable instrument. The use of the mails, proved to have been used as a part of said fraudulent scheme, was that the check was endorsed by defendants and cashed at the Peoples Bank of Elkton, Maryland, which said bank deposited said check in the mail to be delivered to the bank in Wilmington, Delaware, on which it was drawn. In reversing the judgment of conviction of petitioner in the Kann case, the Supreme Court of the United States held that the Elkton Bank became the owner of the check as a holder in due course when it was endorsed by defendants and cashed by it. The Court said:

"The banks which cashed or credited the checks, being holders in due course, were entitled to collect from the drawee bank in each case and the drawer had no defense to payment. The scheme in each case had reached fruition. The persons intended to receive the money had received it irrevocably. It was immaterial to them, or to any consummation of the scheme, how the bank which paid or credited the check would collect from the drawee bank. It cannot be said that the mailings in question were for the purpose of executing the scheme, as the statute requires."

The decision of the Supreme Court of the United States in the Kann case is not, in the opinion of this Court, authority for the decision of the 6th Circuit Court of Appeals in the Sheridan case, supra. In the Kann case the instrument negotiated by the defendants was a *valid, lawful, negotiable instrument.* Under the Uniform Negotiable Instrument Act the negotiation of a valid, legal negotiable instrument makes the person who receives such instrument, without notice of any infirmities therein, a holder in due course. A holder in due course of a valid, legal negotiable instrument irrevocably becomes the owner thereof and entitled to receive the proceeds of such instrument from the

988

maker. 10 C.J.S., Bills and Notes, § 13, p. 423. Under the Uniform Negotiable Instrument Act a forged, fraudulent and spurious instrument is not binding on any person and is wholly inoperative to transfer any title or right of property, and no right to retain the instrument or to give a discharge therefor, or to enforce a payment thereof against any party thereto, is acquired through or under such forged instrument. 10 C.J.S., Bills and Notes, § 190, p. 684. The doctrine of bona fide holder in due course does apply to a negotiable instrument that is not genuine or, if it is executed without authority from its supposed maker. 8 Am.Jur. p. 318. The distinction between the decision of the Supreme Court of the United States in the Kann case, and the decision of the 6th Circuit Court of Appeals in the Sheridan case, is that in the former a valid, legal, negotiable instrument was at issue and in the latter, a forged, fraudulent and spurious instrument was involved. Under such circumstances Sheridan v. United States, supra, cannot control the ruling of this Court on the instant motion.

 The fraudulent checks which defendant is charged with having forged and cashed were executed and issued by defendant in the State of Missouri. Sec. 3039, R.S.Mo.1939, Mo.R.S.A., provides:

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

Under said statute a forged indorsement passes no title to a subsequent holder of a negotiable instrument. Dowling v. Grand Avenue Bank of St. Louis, 216 Mo.App. 86, 267 S.W. 1. It is also the law of said state that where a note is forged by having defendant's name signed thereto by another, without his authority or subsequent ratification, it is wholly inoperative and void, whether the holder is an innocent or guilty purchaser. German-American Bank v. Barnes, Mo.App., 185 S.W. 1194, Scott v. First Nat. Bank in St. Louis, 343 Mo. 77, 119 S.W.2d 929. The law of the state in which a check, or negotiable instrument, is executed, determines the formality and essential validity thereof, and the incidents of the obligation of such instrument. United States v. Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651.

 Such being the law of the State of Missouri, when a person executes and issues a forged check in said State he must be held to knowledge that under the law of said State he is not passing to the person who cashes such check or subsequent holder thereof any right of property in the spurious obligation he has forged and issued. If there is any title in a forged check the same remains forever with the forger. In the first instance the forger of a check is the owner of the paper by which such spurious obligation is brought into existence and his issuance and delivery thereof to another does not transfer title to such paper or the purported obligation it contains. No subsequent holder of such a document has the right to retain the same. The title to such a document and all the incidents of the purported obligation thereof remaining with the forger and he cannot divest himself or be relieved from liability for the consequences through which his property passes. Any person capable of executing a spurious instrument, such as a check drawn on a bank in a State other than the one in which he executes and passes the same, knows when he puts such document in circulation that said check will eventually be transported, by subsequent innocent holders thereof, to the place where the bank, on which it is drawn, is located. It makes no difference to such person how or who transports such check. He knows, however, it will be transported in some fashion. Possessing such knowledge and retaining title to said check, in starting such spurious instrument on its consequential journey he makes each sub-

sequent holder, or transferee thereof, his agent. One who permits another to use his property in a given fashion is liable for the consequences of such use. This is so under civil, as well as criminal, law. In 22 C.J.S., Criminal Law, § 84(b), p. 151, it is said:

"If a person causes a crime to be committed through the instrumentality of an innocent agent, he is the principal in the crime, and punishable accordingly, although he was not present at the time and place of the offense, as is ordinarily required to render ,one guilty as a principal. As between him and the innocent agent, there is no such relation as principal in the first and second degree or principal and accessory; he alone is the guilty party. Under such circumstances, an exception to the rules applicable to principals and accessories, in the trial of criminal cases, arises ex necessitate legis. * * * The analogy holds good as to persons who take or share the fruits of the crime after it has been committed by an innocent agent."

The crime denounced in Sec. 415 of T. 18 U.S.C.A. is the transportation or causing to be transported in interstate commerce "any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered or counterfeited." Under Sec. 414 of said title, a check is defined to be a security. The prohibition of said statute is not directed against a fraudulent scheme but against the pollution of interstate commerce with falsely-made, forged, altered, or counterfeited securities. In Tolle v. Sanford, D.C., 58 F.Supp. 695, it is held that where accused forged and passed a check in one state upon a drawee bank in another state, making it necessary that such check be transmitted in interstate commerce, the accused was guilty of having violated the National Stolen Property Act.

Under the facts here involved defendant was legally and lawfully indicted and sentenced under his plea of guilty, for having violated the National Stolen Property Act. Defendant's motion to set aside and quash the judgment and sentence heretofore entered herein is overruled.