## HALLIBURTON ENERGY SERVICES, INC., Plaintiff,

### v.

## FLEET NATIONAL BANK f/k/a SUMMIT BANK, Defendant.

### No. CIV.A. H–02–2356.

United States District Court, S.D. Texas, Houston Division.

July 19, 2004.

Arthur Scot Chase, Karotkin Chase et al, Houston, TX, for Halliburton Energy Services Inc, a Delaware Corporation, Plaintiff.

Brett L Myers, David Goodman et al, Mark A Goodman, David Goodman et al, Dallas, TX, for Fleet National Bank fka, Summit Bank, Defendant.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Pending before the court is Halliburton Energy Services, Inc.'s Motion for Summary Judgment (Docket Entry No. 21). For the reasons stated below, the motion will be denied.

### I. Factual and Procedural Background

On June 24, 2002, plaintiff, Halliburton Energy Services, Inc. ("Halliburton"), brought this action against the defendant, Fleet National Bank f/k/a Summit Bank ("Fleet"), alleging breach of a presentment warranty as a result of Fleet's honoring an altered check for $215,000.00 that Halliburton had issued to Arthur Andersen, L.L.P. on a Citibank Delaware ("Citibank") account.[1]

On August 26, 2002, Fleet filed an Answer (Docket Entry No. 4), which was later superceded by Defendant's First Amended Original Answer (Docket Entry No. 13). On May 14, 2004, Halliburton filed the pending Motion for Summary Judgment (Docket Entry No. 21), to which Fleet responded (Docket Entry No. 27) on June 15, 2004.

The following relevant facts are undisputed.

On March 20, 2000, Halliburton issued Check Number 1283772, drawn on a Citibank account, to Arthur Andersen for $215,000.00.[2] The check was deposited in the United States mail. An unknown person stole the check from the mail and then altered the payee to "Paul A. Schumacher."[3]

---

1. Plaintiff's Original Complaint, Docket Entry No. 1 at ¶¶ 12–14. The events underlying this action actually occurred at "Summit Bank." However, in recounting this action's factual history, the court refers exclusively to "Fleet" for the sake of clarity.

2. Motion for Summary Judgment, Docket Entry No. 21, Exhibit A, Affidavit of David Piszko.

3. Id., Exhibit B, Copy of Halliburton Check No. 1283772.

On March 27, 2000, a person claiming to be "Paul A. Schumacher" opened a Fleet brokerage account from the bank's Internet site.[4] The application included identifying information for "Paul A. Schumacher," including social security number and date of birth.[5] The person posing as "Paul A. Schumacher" endorsed the altered check by signing the name "Paul A. Schumacher" on the back and presented it to Fleet, which honored it.[6] Fleet then presented the check to Citibank, the drawee/payor bank. On March 30, 2000, Citibank charged Halliburton's checking account the sum of $215,000.00 because Citibank had paid Check Number 1283772 in full.[7]

On May 15, 2000, Arthur Andersen informed Halliburton that it had not received the $215,000.00 check.[8] A Halliburton employee working for Accounts Payable then contacted Citibank and learned that the check had been paid.[9] On May 17 Halliburton requested the original check from Citibank.[10] Upon receiving and examining the check, Halliburton saw that the payee's name had been altered and that the check had been endorsed by the fictitious payee, "Paul A. Schumacher" "for deposit only."[11]

On June 26, 2000, Citibank notified Fleet that Fleet had honored a check that had been fraudulently altered and asked for prompt reimbursement of what Citibank deemed a wrongful payment.[12] The request was denied. Citibank then assigned any claim it may have against Fleet to Halliburton.[13]

## II. *Standard of Review*

Summary judgment is authorized when no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 2511. The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d

---

**4.** Response, Docket Entry No. 27, Exhibit 2, "Paul A. Schumacher"'s Account Application.

**5.** *Id.* at p. 2.

**6.** Motion for Summary Judgment, Docket Entry No. 21, Exhibit A, Affidavit of David Piszko; Response, Docket Entry No. 27, Exhibit 2, "Paul A. Schumacher"'s Account Application.

**7.** Plaintiff's Original Complaint, Docket Entry No. 1, Exhibit C, Affidavit of Citibank Delaware.

**8.** Motion for Summary Judgment, Docket Entry No. 21, Exhibit A, Affidavit of David Piszko.

**9.** *Id.*

**10.** *Id.*

**11.** *Id.*

**12.** *Id.*, Exhibit B, letter from Citibank to Fleet.

**13.** *Id.*, Exhibit C, Affidavit of Citibank Delaware at ¶¶ 4–5.

1069, 1075 (5th Cir.1994) (*en banc*) (*quoting Celotex,* 106 S.Ct. at 2553–2554) (emphasis in original). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Id.* (*citing Celotex,* 106 S.Ct. at 2553–54, 106 S.Ct. 2548). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Factual controversies are to be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little,* 37 F.3d at 1075.

### III. *The Parties' Arguments*

### A. Halliburton's Arguments

Halliburton states that Citibank assigned to Halliburton Citibank's right to any claim against Fleet based on the facts underlying this action. Halliburton contends that it is entitled to summary judgment because Fleet breached its presentment warranties to Citibank pursuant to Texas Business and Commerce Code sections 4.207 and 4.208. Specifically, Halliburton argues that Fleet breached its warranty that the check that it presented to Citibank for payment had not been altered. In order to avoid the obligations imposed on Fleet under Texas law, Halli-

burton asserts that Fleet has alleged the "fictitious payee" affirmative defense contained in Texas Business and Commerce Code section 3.404. Halliburton argues that this defense is not applicable because Halliburton did not make the check out to a fictitious payee but to Arthur Andersen. Halliburton emphasizes that no evidence exists that any Halliburton employee, agent, or representative was involved in the check's alteration. Instead, the check was stolen after it was placed in the United States mail and was altered after leaving Halliburton's control.

Halliburton claims that it is entitled to a judgment in the amount of $215,000.00 plus costs and expenses incurred to obtain that judgment. Halliburton contends that it has incurred reasonable and necessary attorneys' fees of $14,512.00 and reasonable and necessary expenses of $238.30, and that its attorneys have advanced $2,221.00 for additional expenses on its behalf.[14]

### B. Fleet's Arguments in Opposition

Fleet argues that Halliburton's motion should be denied because the affirmative defense described in section 3.404(b) of the Texas Business and Commerce Code applies to this action. Fleet contends that, under section 3.404(b), Fleet was a "holder" of the check because the forger's endorsement was effective because the forger endorsed the check in the name of the payee appearing on the check while claiming to be that payee. According to Fleet, the only way that Halliburton can recover from Fleet is if Halliburton establishes that Fleet, by failing to exercise ordinary care, contributed to Citibank's loss. Fleet argues that Halliburton has not produced any evidence to contradict Fleet's asser-

---

**14.** Motion for Summary Judgment, Docket Entry No. 21, Exhibit D, Affidavit in Support of Attorneys' Fees.

tion that it processed the check in accordance with normal banking procedures.

Fleet also argues that Citibank failed to give notice of the alleged breach of a presentment warranty within thirty days of becoming aware of the breach, which Fleet claims that Citibank is required to do by statute. Fleet notes that it is undisputed that Fleet did not receive notice until June 26, 2000, ninety days after Fleet presented the check to Citibank for payment and forty days after Citibank learned from Halliburton that there was a problem with the check.

Fleet contends that fact issues remain as to whether it failed to exercise ordinary care in processing the check and, if it did, whether Fleet's liability is nevertheless discharged because of Citibank's delay in giving Fleet notice, which may have contributed to Citibank's loss.

## IV. *Analysis*

### A. The Relevant Law [15]

Section 4.208 of the Texas Business and Commerce Code sets out the warranties that an entity makes when it presents a check to a drawee bank for payment. Those warranties include the promise that the check was not altered. However, a presenting bank may rely on an affirmative defense in section 4.208(c), which refers back to section 3.404:

If a drawee asserts a claim for breach of warranty under Subsection (a) based on an unauthorized indorsement of the draft or an alteration of the draft, the warrantor [or presenter] may defend by proving that the indorsement is effective under Section 3.404 or 3.405 or the drawer is precluded under Section 3.406 or 4.406 from asserting against the

drawee the unauthorized indorsement or alteration.

TEX. BUS. & COM. CODE § 4.208(c) (Vernon Ann. Stat.2004).

The relevant portion of section 3.404 states:

(b) If (i) a person whose intent determines to whom an instrument is payable (Section 3.110(a) or (b)) does not intend the person identified as payee to have any interest in the instrument, or (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement:

  (1) Any person in possession of the instrument is its holder.

  (2) An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

(c) Under Subsection (a) or (b), an indorsement is made in the name of a payee if:

  (1) it is made in a name substantially similar to that of the payee; or

  (2) the instrument, whether or not indorsed, is deposited in a depositary bank to an account in a name substantially similar to that of the payee.

(d) With respect to an instrument to which Subsection (a) or (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss re-

---

**15.** The provisions of the Texas Business and Commerce Code that apply here have been adapted from the Uniform Commercial Code ("U.C.C.") with minimal variations and have been annotated with U.C.C. comments. Therefore, the court's analysis relies on cases that have interpreted the analogous U.C.C. provisions and on U.C.C. comments.

sulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

TEX. BUS. & COM. CODE § 3.404(b)-(d) (Vernon Ann. Stat.2002).

Section 3.404 thus covers cases in which an instrument is payable to a fictitious or nonexistent person and in which the payee is a real person but the drawer or maker of the instrument did not intend the payee to have any interest in the instrument. U.C.C. § 3–404 cmt. 2 (reproduced following TEX. BUS. & COM. CODE § 3.404 (Vernon Ann. Stat.2002)). The defense to which section 4.208(c) refers, by incorporating section 3.404(b), is known as the "fictitious payee" or "impostor" rule. An impostor is "[o]ne who pretends to be someone else to deceive others, esp. to receive the benefits of a negotiable instrument" (BLACK'S LAW DICTIONARY 760 (7th ed.1999)), or "a person who practices deception under an assumed character, identity or name" (RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY 662 (2d ed.1999)).

The impostor rule applies when a bank has honored a check made out to a fictitious payee. If the impostor's endorsement is effective, the collecting bank then becomes a "holder in due course." A "holder in due course is one who takes an instrument (1) for value, (2) in good faith, and (3) without notice of any defense." *Aetna Life & Casualty Co. v. Hampton State Bank*, 497 S.W.2d 80, 86 (Tex.Civ. App.—Dallas 1973, writ ref. n.r.e.). Even a forger can effectively endorse an instrument. *Id.* at 84 (*citing United States v. Guaranty Trust Co.*, 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415 (1934) and *First Nat'l Bank of Wichita Falls v. First Nat'l Bank of Borger*, 37 S.W.2d 802 (Tex.Civ.App.— Amarillo 1931, writ ref'd)). Unless the depository bank knew about the forgery, there is no breach of warranty when the depository bank presents it to the drawee. Therefore, in such circumstances, the presenting bank is not liable for the drawer's or drawee's loss.

Under section 3.404(d) the drawee may override the depository/collecting/presenting bank's affirmative defense only if the collecting bank failed "to exercise ordinary care in paying or taking the instrument and that failure contribute[d] to loss resulting from the payment of the instrument[.]" TEX. BUS. & COM. CODE § 3.404(d) (Vernon Ann. Stat.2004). The "ordinary care" standard is just that: It does not mandate that a depository bank engage in peculiar vigilance. In fact, the comments accompanying section 3.404(d) suggest that a collecting bank is not liable for breaching its presentment warranties unless it *knew* the instrument had been altered when that bank accepted it. U.C.C. § 3–404 cmt. 2.

If the drawee bank can establish that the collecting bank failed to exercise ordinary care, the drawee may recover from the presenting bank "to the extent the failure to exercise ordinary care contributed to the loss." TEX. BUS. & COM. CODE § 3.404(d) (Vernon Ann. Stat.2004).

**B. Application**

The parties agree about the identities and roles of the participants in the transactions underlying this action. But because the legal parlance used to identify the participants in transactions involving negotiable instruments is unusually opaque, the court offers the following encapsulation:

| PARTY | ROLE | ACTION |
| --- | --- | --- |
| Halliburton | Drawer | wrote the check to Arthur Andersen and placed it in the mail |
| Arthur Andersen | Original Payee | designated to receive the check |
| "Paul A. Schumacher" | Fictitious Payee/Impostor | stole, altered, endorsed, and deposited check in a new Fleet brokerage account |

| Fleet | Collecting Bank, Depository Bank, Presenting Bank | accepted check from "Schumacher" for deposit, presented check to Citibank for payment |
|---|---|---|
| Citibank | Drawee/Payor | received check from Fleet and deducted amount from Halliburton's account |

The parties also agree that the check in question was unlawfully altered. The sole issue is who bore the risk of this $215,000.00 loss that resulted from the criminal conduct of the person masquerading as "Paul A. Schumacher": Citibank or Fleet.

The parties have not cited, nor has the court found, a case with precisely analogous facts. However, the U.C.C. comments and a fairly similar Texas case, discussed below, clarify that Fleet cannot be saddled with the loss unless Halliburton (standing in the shoes of Citibank) can establish that Fleet failed to exercise ordinary care in accepting the altered check. Moreover, Fleet would only be liable to Halliburton *qua* Citibank to the extent that Fleet's failure to exercise ordinary care, as distinct from other factors, contributed to Citibank's loss.

*Aetna Life & Casualty Co. v. Hampton State Bank* presents the following illuminating fact-pattern. A drawer, Pizza Inn, Inc., owned printed check forms provided by its drawee bank, Northwest National Bank ("Northwest"). An unidentified individual stole one or more of those printed forms and made a check out to "Pizza Inn, Inc. No. 32," a fictitious entity. The thief then forged the drawer's signature and endorsed the check on behalf of the ficti-

tious payee. The check was then deposited in a new account at Hampton State Bank ("Hampton") opened in the name of "Pizza Inn, Inc. No. 32" (just as "Paul A. Schumacher" opened a new Fleet account into which he deposited the stolen check that had been altered so that it was payable to "Paul A. Schumacher"). Hampton presented the altered check to the drawee, Northwest, and was paid. Later, after most of the funds had been withdrawn from the forger's account, Hampton discovered the forgery. The germane issue in the case was whether Hampton, as the collecting bank, had breached its presentment warranties to Northwest, the drawee. The court concluded that the U.C.C. makes a drawee's payment of a forged check final unless the collecting bank failed to exercise ordinary care and was not a holder in due course. *Id.* at 85–86.

Halliburton has not presented evidence that Fleet was anything other than a holder in due course. In other words, Halliburton has not offered evidence of Fleet's bad faith, *e.g.*, that Fleet's employees connived with the forger. Nor has Halliburton provided any evidence that Fleet had reason to believe that the check had been fraudulently altered. Perhaps at trial Halliburton can convince the jury that Fleet, which dealt directly with the impostor, took the forged check with notice of the forgery or accepted the instrument by failing to exercise ordinary care, which would have exposed the forgery.[16] But whether

---

16. A recent criminal case, *United States v. Odiodio*, 244 F.3d 398 (5th Cir.2001), merits distinguishing because that case involves a criminal enterprise similar to the one under-

lying this action. *Odiodio* involved a check made out by one company to another that had been stolen from the mail and altered so that

Fleet could have readily ascertained that the check had been fraudulently altered is a fact issue that precludes summary judgment for Halliburton.

■ Fleet also argues that Citibank failed to notify Fleet of Citibank's claim for breach of warranty until June 26, 2000, forty days after it learned from Halliburton that there was a problem with the check. Section 4.208(e) of the Texas Business and Commerce Code states that "[u]nless notice of a claim for breach of warranty is given to the warrantor [here Fleet] within 30 days after the claimant [here Citibank] has reason to know of the breach and the identity of the warrantor, the warrantor is *discharged to the extent of any loss caused by the delay in giving notice of the claim.*" TEX. BUS. & COM. CODE § 4.208(e) (Vernon Ann. Stat.2004) (emphasis added). Determining the applicability of this affirmative defense would mandate resolution of the following fact questions: (1) When did Citibank have the requisite knowledge that the check in question had been fraudulently altered; (2) did Citibank fail to notify Fleet within thirty days of acquiring that knowledge; and (3) if Citibank did delay, to what extent did that delay contribute to Citibank's loss, perhaps by reducing the odds that Fleet could help unmask "Paul A. Schumacher" and obtain a forfeiture?

## V. *Conclusion and Order*

For the reasons set forth above, Halliburton's Motion for Summary Judgment (Docket Entry No. 21) is **DENIED**.

---

it was made out to a new payee, an individual named "Robert Allen Burr." Someone then opened a brokerage account with Charles Schwab by mail in the name of "Robert Allen Burr," the fictitious payee. Whoever opened the account used identifying information, including social security number and date of birth, just as "Paul A. Schumacher" did. *Compare id.* at 400 *with* Response, Docket Entry No. 27, Exhibit 2. In *Odiodio* the government did not offer evidence as to who had actually perpetrated these acts. *Id.* However, at trial Robert Allen Burr testified that he had never seen the check in question and had not had anything to do with any of the transactions. *Id.* Someone later arranged to have money wired from the brokerage account to two different Texas bank accounts, one of which was held in the name of one of the defendants. *Id.* The Fifth Circuit ultimately concluded that the defendants were improperly convicted of bank fraud because the banks were never exposed to any civil liability for the loss sustained by Charles Schwab, a financial company. The Fifth Circuit reasoned that "Texas law assigns the full risk of the loss to the bank that dealt with the forger or his work." *Id.* at 402. This statement, however, oversimplifies the law. While the result in *Odiodio* may have been correct (because Charles Schwab, which had dealt with the defendants only by telephone, may well have failed to exercise ordinary care in authorizing the wire transfer), Texas law does not categorically assign the full risk of loss to the entity that dealt directly with the forger. Instead, as explained above, the Texas Business and Commerce Code, like the U.C.C., relieves from liability those who take an altered instrument from a forger in good faith if the instrument was effectively endorsed in the name of the altered payee and if the collecting/depository bank exercised ordinary care in accepting the altered instrument and then collecting upon it.